33931.   ATLANTIC COAST LINE RAILROAD CO. *et al.*
*v.* HANSFORD.

DECIDED FEBRUARY 19, 1952—REHEARING DENIED MARCH 6, 1952.

*Ford & Houston, Peacock, Perry & Kelley,* for plaintiffs in error.

*Farkas, Landau & Davis,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Special grounds 4, 5, 6, 7, and 8 complain that the trial court failed to give in charge certain written requests. Each request is quite lengthy and the wording of all is similar. The request in ground 4 concerned the duty of ordinary care on the part of the plaintiff to use his sense of sight to apprehend the approach of the train. The request in ground 5 concerned the duty of ordinary care on the part of the plaintiff to use his sense of hearing to apprehend the approach of the train. Ground 6 sets out a request to charge in substance that, even though the plaintiff looked, if he could have, by a proper use of the sense of sight, seen the train, but did not do so, and the jury found this to be a lack of ordinary care which resulted in the plaintiff's injury, he could not recover. In ground 7 the request is to the effect that, if the plaintiff looked but did not see, and did not see because he had placed certain cardboard boxes in the automobile which obstructed his view, the jury should determine whether this constituted negligence and the proximate cause of his injuries so as to preclude recovery. In ground 8, the requests of grounds 3 and 4 are combined, to the effect that, if by a prudent and careful manner of looking and listening, the plaintiff could have become aware of the approaching train but did not do so, the jury, if it found the plaintiff's negligence in not becoming aware of the approaching train was the cause of his injuries, should return a verdict for the defendant. These requests were not given verbatim, but were consolidated and charged in substance. The judge charged the defendant's contention that the collision was due to the plaintiff's failure to use ordinary care by going upon the crossing without looking or listening for the approach of the train. He further charged that, "if you should believe that, under the particular circumstances that existed on this occasion, it was the duty of the plaintiff, as a careful, ordinarily prudent man would have done, to use his sense of seeing, and his sense of hearing, and by so doing he could have seen the train approaching, and that he could have avoided the accident," he could not recover. He again charged that, if "the plaintiff could have avoided this collision by operating the automobile he was driving in an ordinarily prudent and careful manner and looking and listening for the approach of the train as ordinary care and diligence

required him to do under the circumstances," he could not recover. He further charged the defendants' contention that the "plaintiff did not exercise ordinary care of a prudent man at the time and occasion of crossing this track; they contend that he had in his car seat certain cardboard boxes, which obstructed his view; that he could not see out of the window as he probably should have, and that, by reason of such obstruction in the seat of his car, he was prevented, by his own act, from seeing the approach of the train as he should have." There then followed immediately a direction that the jury should consider every fact and circumstance in determining whether the plaintiff exercised the ordinary care of a prudent man before he entered the crossing.

The charges requested were clearly repetitious in dealing separately with the plaintiff's duty to look, to listen, to both look and listen, to see what he was looking at, and not to obstruct his vision so that he could not see what he was looking at. These elements were charged specifically, but they were charged jointly rather than severally. As to repetition in requested charges, it was held in *Hammack* v. *State*, 52 *Ga.* 398, 404, as follows: "The judge was not required to repeat it. If he distinctly and clearly gave the law upon the point, his duty was discharged. The repetition of it, in another shape, is only a waste of time and a confusion, instead of making the matter clearer. When is the judge to stop? Is he to repeat, over and over again, the same principle, in every shape in which ingenuity can throw the idea? We think not." A party to an action has a right to have the court charge in the language of an apt and pertinent request, and this is true although the principle is covered by other instructions of the court in more general and abstract terms. *Metropolitan Street Ry. Co.* v. *Johnson*, 90 *Ga.* 500 (16 S. E. 49). Yet, if the matter be charged in substance, it will not require reversal that the exact words of the request are not used. *Werk* v. *Big Bunker Hill Mining Corp.*, 193 *Ga.* 217 (4) (17 S. E. 2d, 825); *Battle* v. *State*, 105 *Ga.* 703 (32 S. E. 160); *Southern Ry. Co.* v. *Wilcox*, 59 *Ga. App.* 785 (4) (2 S. E. 2d, 225). The trial judge did not err in failing to adopt the repetitious phraseology of the defendants' requests, he having specifically stated their substance and the principles of law relating thereto.

■ Special ground 9 complains of the charge that the rights of a railroad to lay and use tracks in a public street must be exercised in such manner as not to unnecessarily or materially obstruct or interfere with the rights of the general public therein. This is a correct principle of law. *Louisville & Nashville R. Co.* v. *Ellis*, 54 *Ga. App.* 783 (189 S. E. 559). This ground is without merit.

■ Special ground 10 complains of the following excerpts from the charge: "It is a question for you to determine whether the defendants operating the train on this occasion failed to give adequate and sufficient warning of the approach of the train; and whether they were operating the train at a dangerous speed according to the time, locality, and circumstances surrounding and existing at the time. . . It is the duty of the defendant railroad, in approaching this crossing in question, to operate its train at a reasonable and safe rate of speed, and what is a reasonable and safe rate of speed is to be determined by you," etc., on the ground that the true rule is not whether the speed of the train was either "dangerous" or "reasonable and safe," but whether the defendant used ordinary care in operating the train at the speed at which it was being operated. A charge given in *Thompson* v. *Powell*, 60 *Ga. App.* 796 (5 S. E. 2d, 260), to the effect that railroad trains must always run at a reasonable and safe rate of speed, to be determined by the surrounding conditions, was held not error over an objection that it did not state the true principle of law involved. The converse of a reasonable and safe rate of speed is an unreasonably rapid and unsafe rate of speed, which is the equivalent of a dangerous rate of speed. Although the language suggested by the plaintiff in error may be technically more apt, it is highly improbable that the jury would interpret "reasonable and safe" in defining the rate of speed, so as to put a higher degree of care upon the defendant than that required by law, especially in view of the court's instruction that it was charged with the duty of ordinary care to prevent injury to others. This ground is without merit.

■ The plaintiff's petition alleged in part as follows: "10. Plaintiff has suffered general damages by reason of pain and suffering, disfigurement and impairment of earning capacity to work in the sum of $28,475.00. 11. Plaintiff shows that said

injury has impaired his earning capacity at least 25%." Special ground 12 contends that, under these pleadings, it was error to charge the jury so as to authorize them to award the plaintiff damages for loss of future earnings; and special ground 13 contends that, in so charging, it is error to fail to instruct the jury that such future earnings should be reduced by declining years and diminished capacity to labor. The testimony of the plaintiff was to the effect that before the injury he was making about $35 per week; that he was away from his job for three months and one week; that he is now working and is making $35 per week; that it is necessary for him to take about two days a week from his work; that he still limps, and for about six months after going back to work his leg would "give out" on him; and that he is not able to lift certain articles and do other described duties as well as before because of his bodily weakness. There was medical testimony that the plaintiff suffered severe pain and would continue to suffer from the involvement of the fracture of the socket of the hip bone, "I wouldn't say permanently—I don't know how long that will continue, but he will likely suffer from it a great deal."

"A diminution in one's capacity to labor is an element of pain and suffering. *Wall Realty Co.* v. *Leslie,* 54 *Ga. App.* 560 (188 S. E. 60). The rule for determining such damages is the enlightened consciences of fair and impartial jurors. *Railway Express Agency* v. *Standridge,* 68 *Ga. App.* 836 (24 S. E. 2d, 508). A diminution in one's capacity to earn money is another distinct element of damages, and the measure of such damages involves numerous considerations, among which are, first, the earnings before the injury, earnings after the injury, probability of increased or decreased earnings in the future, considering the capacity of the injured party, effects of sickness and old age, etc." *City Council of Augusta* v. *Drawdy,* 75 *Ga. App.* 543, 547 (43 S. E. 2d, 569). "Capacity to work" is an item of general damages. *City Council of Augusta* v. *Owens,* 111 *Ga.* 464, 479 (36 S. E. 830). Its amount is in the discretion of the jury. "Loss of future earnings," like loss of future services, is an item of damages which must be reduced to its present cash value. *Central Truckaway System* v. *Harrigan,* 79 *Ga. App.* 117, 126 (53 S. E. 2d, 186). The petition here alleges impairment of

"earning capacity to work," and the plaintiff offered evidence that his capacity to do the type of job for which he was hired had been impaired, although notwithstanding that he was earning the same wages after the injury as he did before. Under the pleadings and evidence in this case, the plaintiff was not suing for loss of future earnings as an item of special damage, but he did allege and prove facts which would authorize the jury to find a diminution in his earning capacity. On this subject the court charged: "If you should find that the plaintiff suffered personal injuries which would reduce his earning capacity for a time extending into the future, and that he is entitled to recover on account of such reduced earning capacity, the jury would determine the extent of the reduction, how long it will continue, and the gross loss . . reduced to its present cash value. . . You would first determine the extent of the diminution of his capacity to earn such money—that is, to what extent he is incapacitated, and the reasonable value of such lost earning capacity, and, having done that, the jury would reduce that loss to its present cash value." After illustrating the method of reducing an amount to present cash value, the court pointed out that certain mortality and annuity tables had been introduced in evidence, "which you may use for the purpose of determining the value of reduced earning capacity over a period of time. You may use these tables or may not use them—just as you see fit. These tables set forth the principle of reducing one dollar to its present cash value by adding the seven percent interest."

Under the pleadings and evidence, the court properly failed to instruct the jury specifically on loss of future earnings, but did properly instruct them on the question of reduced earning capacity; nor are we cited any authority which would have made it necessary to plead and prove specifically the amount thereof, this being a question for the jury under the instructions of the court. The wages actually lost were pleaded as an item of special damage. Future impairment of earning capacity, where there is no present loss of earnings as such, must necessarily be an element of damage admissible under general allegations, and the criticism of the charge on the ground that this element was not pleaded as an item of special damage is not well taken. It was pleaded that the plaintiff's earning capacity was diminished

by 25%. This is not to say, however, that loss of earning capacity is compensable where there is no evidence as to earning capacity based on past experience, and evidence must be introduced as to the extent to which the earning capacity has been diminished, and damages so found must be reduced to their present cash value. *West* v. *Moore*, 44 *Ga. App.* 214 (160 S. E. 811). In the present case, the judge charged fully on reducing such elements to present cash value. He did not charge at all on the mortality table, except to mention that its use by the jury was optional. The plaintiff was 38 years old at the time of his injury. There was no evidence that the diminished capacity to earn money, if it existed, was permanent in character, and the court, in charging thereon, did not indicate that the jury might find it to be permanent, but rather that they might find it to be reduced "for a period of time extending into the future," and should determine "how long it will continue." A charge on reduction of earning capacity extending into the plaintiff's declining years in which there might be a decrease in his capacity otherwise to labor at his vocation and earn money would have been more hurtful to the defendants than otherwise, as it would have suggested a permanent nature of the disabilities not supported by the evidence. Therefore, under the circumstances of this case, the failure so to charge is not such harmful error as to require a reversal, there being no request to charge this principle of law. See *Western & A. R. Co.* v. *Frazier*, 66 *Ga. App.* 275 (18 S. E. 2d, 45); *Central of Ga. Ry. Co.* v. *Ray*, 129 *Ga.* 349 (58 S. E. 844); *Roberts* v. *McClellan*, 80 *Ga. App.* 199 (55 S. E. 2d, 736); *Atlantic Coast Line R. Co.* v. *Heyward*, 82 *Ga. App.* 337 (60 S. E. 2d, 641).

■ There are exceptions to the judgment of the trial court overruling certain demurrers of the plaintiff in error. The case was not argued orally before this court, and the brief of counsel contains no reference to these exceptions. The same is true as to special ground 11 of the amended motion for a new trial and the general grounds, all of which are treated as abandoned. *Southern Ry. Co.* v. *Black*, 141 *Ga.* 35 (4) (80 S. E. 323).

The trial court did not err in overruling the motion for a new trial.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur.*