A91A0549. CENTRAL OF GEORGIA RAILROAD COMPANY
et al. v. MARKERT et al.
(410 SE2d 437)

CARLEY, Judge.

The relevant facts in this case are as follows: After their son was killed when his vehicle was struck at a railroad crossing, appellee-plaintiffs initiated the instant wrongful death action against appellant-defendants. Following a period of discovery, appellants moved for partial summary judgment as to certain allegations of their negligence. The trial court denied appellants' motion, but certified its order for immediate review. Appellants applied to this court for an interlocutory appeal and the instant appeal results from the grant of their application.

1. Appellants' motion was based, in part, on the ground of federal preemption. Assuming without deciding that federal preemption is an affirmative defense, appellants' failure to have raised that defense in their answers was itself waived by appellees. *Phillips v. State Farm &c. Ins. Co.*, 121 Ga. App. 342 (2a) (173 SE2d 723) (1970).

2. Appellees had alleged that appellants' failure to have equipped the locomotive with certain safety and warning devices was actionable negligence. However, appellants showed that the locomotive had been equipped with such safety and warning devices as were required under the Federal Locomotive Boiler Inspection Act. The trial court's denial of appellants' motion for partial summary judgment as to the allegations that the locomotive had been negligently equipped is enumerated as error.

"The Supremacy Clause of the United States Constitution dictates that federal law preempts inconsistent state law. [Cit.] 'Preemption may be either express or implied, and is "compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." [Cit.]' [Cit.]" *Poloney v. Tambrands, Inc.*, 260 Ga. 850-851 (1) (399 SE2d 208) (1991). "[T]he power delegated to the [Interstate Commerce] Commission [(Commission)] by the [Federal] Boiler Inspection Act as amended is a general one. It extends to the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." *Napier v. Atlantic Coast Line R. Co.*, 272 U. S. 605, 611 (47 SC 207, 71 LE 432) (1926). The federal enactment "was intended to occupy the field. The broad scope of the authority conferred upon the [C]ommission leads to that conclusion. Because the standard set by the [C]ommission must prevail, requirements by the states are precluded, however commendable or however different their purpose. [Cits.]" *Napier v. Atlantic Coast Line R. Co.*, supra at 613.

It follows, therefore, that the trial court erred in failing to grant partial summary judgment in favor of appellants as to the allegation

that the locomotive was negligently equipped. Appellants "complied as a matter of law with [their] duty to provide locomotive warning devices when [they] met the requirements of [the federal regulations]." *Marshall v. Burlington Northern*, 720 F2d 1149, 1153 (7) (9th Cir. 1983).

3. Appellants enumerate as error the trial court's failure to grant partial summary judgment as to the allegation of negligence predicated upon operation of the train "at an excessive speed. . . ."

"In the exercise of ordinary care, the employees of [appellants] were under a duty to operate the train at a moderate and safe rate of speed." *Gay v. Sylvania Central R. Co.*, 79 Ga. App. 362, 367 (3) (53 SE2d 713) (1949). At least until enactment of the Federal Railroad Safety Act of 1970 (FRSA), 45 USC § 421 et seq., the determination of what constituted a moderate and safe rate of speed was for the trior of fact. See *Atlantic Coast Line R. Co. v. Hansford*, 85 Ga. App. 507, 510 (3) (69 SE2d 681) (1952). However, "[i]t is well established that Congress, through the pervasive federal regulation of railroads in the [FRSA], intended to establish nationally uniform railroad safety and preempt state regulation of railroads. [Cit.] The FRSA specifically controls the speed at which trains may operate by classifying sections of track and assigning to each classification a maximum speed limit. The track in question is classified as class four track and, according to federal regulations, the maximum train speed for class four track is 60 miles per hour. Based on the pervasive nature of federal regulation of the subject area[,] . . . train speed is expressly preempted by federal law. [Since the uncontroverted] evidence [in the instant case shows] that the train [never] exceeded this federal standard, any common law or statutory negligence claim based on the train's speed is preempted by federal law. [Cit.]" *Easterwood v. CSX Transp.*, 742 FSupp. 676, 678 (3) (N.D. Ga. 1990), aff'd 933 F2d 1548 (11th Cir. 1991). Thus, a state jury would not be authorized to find that a speed which was less than that authorized by the federal regulations was not a moderate and safe rate of speed.

We would note, however, that appellants' employees "were also under a duty to keep a proper lookout ahead and to warn the public of the approach of the train to the crossing, and, if it was apparent that [appellees' son] was approaching or about to use the crossing, to check the speed of the train or take whatever precautions were necessary in order to avoid injury to [him]." *Gay v. Sylvania Central R. Co.*, supra at 367 (3). Nothing in the FRSA would serve to preempt appellees' claim based upon a purported violation of this duty. See *Florida East Coast R. Co. v. Griffin*, 566 S2d 1321, 1324 (2-5) (Fla. App. 4 Dist. 1990). Thus, if the evidence shows that appellants' employees failed to maintain a proper lookout ahead or to take any precautions after it was apparent to them that appellees' son was about

to cross the tracks, the fact that the train never exceeded the speed authorized by the federal regulation would not establish a defense to appellees' recovery. "We reject the appellants' contention that the [FRSA] has preempted consideration of negligent conduct of a railroad and its agents when faced with a dangerous condition or event, notwithstanding that the acts of negligence involve a failure to reduce speed below the maximum limit established by federal law. [Cits.]" *Florida East Coast R. Co. v. Griffin*, supra at 1324 (5).

4. With regard to the allegations of the negligent inadequacy of the warning devices at the crossing, appellants do not rely upon federal preemption. Instead, they urge that appellees have no viable claim under applicable state tort principles.

OCGA § 32-6-200 relates to the installation of protective devices at grade crossings on the state highway system, the county road systems, and the municipal street systems but, by its terms, not to the installation of protective devices at private crossings. However, this absence of private crossings from the ambit of OCGA § 32-6-200 merely shows that there is no *statutory* duty as to the installation of protective devices at such crossings and that railroads may not be held *negligent* per se as to the installation of protective devices at such crossings. It certainly does *not* establish that there is no *common law* duty as to the installation of protective devices at such crossings so that railroads may not be held liable for *common law* negligence with regard to the installation of protective devices at such crossings. " ' "An act or omission may amount to negligence under the particular facts and circumstances, although there is no statute so declaring." (Cit.)' " *Southern R. Co. v. Ga. Kraft Co.*, 188 Ga. App. 623, 624 (5) (373 SE2d 774) (1988) (a whole court case specifically authorizing the giving of a charge to the jury "that it was to decide whether [the railroad] was negligent in failing to employ additional precautions at the crossing where the collision occurred.") While "[n]on-compliance at [a private crossing] with the statutory requirements applicable to public roads established by law is not, as a matter of law, negligence per se[,] [i]t is generally for the jury to say whether under such circumstances the railroad company was negligent or not. [Cits.]" *Comer v. Shaw*, 98 Ga. 543, 544 (25 SE 733) (1896).

Appellants cite no authority for the proposition that they had no common law duty to provide warning devices because the crossing was private rather than public. It would appear that the status of the crossing as public or private is immaterial to the duty owed to those who had a right to use it. "It is generally for the jury to say whether under such circumstances the railroad company was negligent or not [at a private crossing]. [Cits.]" *Comer v. Shaw*, supra at 544. "With respect to persons rightfully using a private crossing, . . . the duty of the railroad company is similar to its duty as to users of public cross-

ings, and as to them, it must exercise reasonable or ordinary care, commensurate with the danger of the particular situation." 74 CJS 1308, Railroads, § 713. Accordingly, appellants would have no less of a common law duty with regard to a private crossing than they would have with regard to a public crossing.

Appellants urge that, even if they have a duty to provide warnings at private crossings, that duty was not breached in the instant case. However, the general rule in Georgia is that "[i]t is a question for the jury as to what signals or devices should be maintained at a railroad crossing. [Cits.]" *Isom v. Schettino*, 129 Ga. App. 73, 75 (1) (199 SE2d 89) (1973). Construing the evidence most favorably for appellees, the instant case is within rather than without this general rule. Accordingly, the trial court correctly denied appellants' motion for partial summary judgment as to this allegation of negligence.

5. The trial court granted appellees' motion to compel discovery and ordered appellants to answer an interrogatory relating to the employment of such equipment on the locomotive as would *not* otherwise be required under the Federal Locomotive Boiler Inspection Act. In Division 2, we have held that appellants' failure to employ such equipment on its locomotive is not actionable negligence and that summary judgment was erroneously denied as to appellants' liability under the negligent equipment theory. Accordingly, the interrogatory clearly addresses an irrelevant issue and that interrogatory has not otherwise been shown to be reasonably calculated to lead to the discovery of any admissible evidence. It follows, therefore, that the trial court erred in granting appellees' motion to compel discovery as to the irrelevant interrogatory.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Beasley, J., concur specially.*

BEASLEY, Judge, concurring specially.

1. I concur in the ruling in Division 1 but I am of the opinion that an explanation is in order. It is by not raising below the contention that defendants waived by delay the defense of federal preemption, that plaintiffs/appellees waived the point in this court. "Issues not raised in the court below may not be raised [here] for the first time as they present nothing to this court for decision." *Lester v. Groves*, 162 Ga. App. 590, 591 (291 SE2d 785) (1982); *Nodvin v. West*, 197 Ga. App. 92, 95 (3a) (397 SE2d 581) (1990). The majority cites *Phillips v. State Farm &c. Ins. Co.*, 121 Ga. App. 342 (2a) (173 SE2d 723) (1970), as authority concerning appellees' waiver, but that case does not discernibly address this principle.

With respect to whether federal preemption is an affirmative defense which is governed by the procedural rules of OCGA § 9-11-8 (c), see *Wright Assoc. v. Rieder*, 247 Ga. 496, 500 (2) (277 SE2d 41)

(1981), which distinguishes F. R. Civ. Proc. 8 (c) from what is now OCGA § 9-11-8 (c). If subsection (c) applied to this defense, that section might require its being alleged in the answer, or by motion for summary judgment "but only when the motion for summary judgment is the initial pleading tendered by defendant" (which is not the case here), or in the pretrial order that supersedes the pleadings. That is the ruling in *Funding Systems Leasing Corp. v. Pugh*, 530 F2d 91, 96 (9, 10) (5th Cir. 1976). But see *Easterwood v. CSX Transp.*, 933 F2d 1548 (1) (11th Cir. 1991). It does not appear that this issue has been expressly resolved in Georgia.

2. I concur in Division 4 but wish to point out that since there are statutory duties governing the railroad's duties with respect to protective warning devices at public road crossings but not at private way crossings, I cannot agree that it is immaterial that the crossing was not of a public road but rather of a private dirt road leading in and out of a business.[1]

OCGA §§ 32-6-200 to 32-6-202 cover such crossings on the state highway system, the county road systems, and the municipal street systems, specifying who may require and approve them, who shall bear their expense, and who shall maintain them. These provisions place no duty on a railroad to install or maintain protective devices at private crossings. This may be explained by the fact that these provisions are part of the Code chapter on the regulation of maintenance, use, etc., of public roads generally, which is part of Title 32 dealing with "Highways, Bridges, and Ferries." However, the predecessor to OCGA § 32-6-190, which is the general section on the maintenance of grade crossings by railroads, had included also "private ways." Code of 1933, § 94-503. See *Atlantic Coast Line R. Co. v. Layne*, 88 Ga. App. 674, 680 (77 SE2d 565) (1953); *Atlantic Coast Line R. Co. v. Sweatman*, 81 Ga. App. 269 (58 SE2d 553) (1950).

Chapter 8 of Title 46 regulates railroad companies. OCGA § 46-8-194 to 46-8-196 requires certain crossbuck signs at crossings of public highways. No mention is made of private ways. The evidence is that there were crossbuck signs at this crossing.

Since the duty of the railroad is not spelled out in the law with respect to its crossing of private ways, so that its breach would be negligence per se, the duty with respect to warning devices would involve the exercise of reasonable or ordinary care, as the majority states. That would be a jury question, raised by plaintiffs' allegation in their response to defendants' motion for summary judgment that

---

[1] Amendments to the Federal-Aid Highway Act have placed the obligation of regulating the safety of railroad crossings on the states. 23 USC §§ 101 and 130. *Karl v. Burlington N. R.*, 880 F2d 68 (8th Cir. 1989); *Carson v. Burlington N. R.*, #CV 89-0-513 (D.Neb. June 27, 1990) (unpublished).

"[t]he Defendant railroad failed to have active warnings at subject crossing to warn motorists or pedestrians of a train's approach to the crossing."

I am authorized to state that Presiding Judge Banke joins in this special concurrence.

DECIDED JULY 16, 1991 —
RECONSIDERATION DENIED JULY 31, 1991 — 

*Hall, Bloch, Garland & Meyer, F. Kennedy Hall, Steven J. Stewart*, for appellants.
*Burt & Burt, Hilliard P. Burt*, for appellees.