S94Q1242. KITCHEN et al. v. CSX TRANSPORTATION, INC. et al.
(453 SE2d 712)

Thompson, Justice.

This case is before the Court on a certified question from the United States Court of Appeals for the Eleventh Circuit. The facts and procedural history, as established in the opinion of the Eleventh Circuit,[1] are summarized as follows: The incident giving rise to this litigation occurred while John David Kitchen was operating his motor vehicle on Elbert County Road 77.[2] That portion of County Road 77 had at one time included a timber bridge, which crossed above railroad tracks owned by Seaboard Coast Line Railroad, now CSX Transportation, Inc. ("CSXT").[3] By 1979, the bridge had deteriorated, and the county decided that the portion of County Road 77 where the

---

[1] *Kitchen v. CSX Transp.,* 19 F3d 601 (11th Cir. 1994).

[2] County Road 77 had previously been a part of Georgia State Highway 72; in 1961, the State released this portion of Highway 72 to Elbert County.

[3] In 1961, the railroad and the county entered into an agreement whereby: (1) the railroad gave the county the right to continue the overpass; (2) title to the overpass vested in the county, which would, at its expense, maintain the same, including the highway surface; and, (3) all rights granted to the county to use the railroad's right of way would cease, should the overpass be abandoned.

bridge was situated was no longer necessary to through traffic. Consequently, Elbert County entered into an agreement with the railroad, whereby CSXT would remove the bridge, and the County would furnish barricades on either side of County Road 77 where the road terminated. The barricades constructed by the county consisted of piles of rock and dirt.

In May 1988, Kitchen drove his truck over a barricade and into the chasm formerly spanned by the bridge. The vehicle fell some 26 feet onto the railroad tracks below, where it was later struck by a train. Kitchen was found dead at the scene. Kitchen's parents, individually and as representatives of his estate (appellants herein), brought this negligence action against CSXT and Elbert County.[4] The district court granted CSXT's motion for summary judgment on the finding that CSXT "had no duty to erect or maintain any barriers at the ends of County Road No. 77."

Concluding that resolution of the case involves questions of Georgia law which are dispositive but unanswered by precedent of this Court, the Eleventh Circuit certified the following questions:

1. Under the set of facts described above, did CSX Transportation, Inc. owe a duty to John David Kitchen?
2. If a duty was owed, what was the nature of the duty?

We answer the first question, which is dispositive, in the negative.

1. In 1973, the Georgia Code of Public Transportation ("GCPT"), OCGA § 32-1-1 et seq., Ga. L. 1973, p. 947, § 1, was enacted "to revise, classify, consolidate and repeal . . . other laws relating to all public roads [and] bridges, . . . and to establish new laws relating thereto. . . ." Ga. L. 1973, p. 947. The purpose and legislative intent of the GCPT is further set out in OCGA § 32-1-2, as follows:

to provide a code of statutes for the public roads and other transportation facilities of the state, the counties, and municipalities of Georgia. The legislative intent is to provide an effective legal basis for the organization, administration, and operation of an efficient, modern system of public roads and other modes of transportation.

Prior to the enactment of the GCPT, former Ga. Code Ann. § 94-503 placed an absolute duty on railroads to maintain in good order all

---

[4] The complaint was originally filed in the Superior Court of Fulton County, Georgia. CSXT removed the action to the United States District Court for the Northern District of Georgia where plaintiffs filed an amended and recast complaint, naming additional defendants. This appeal concerns only defendant CSXT. With respect to the suit against the remaining defendants, see *Kitchen v. CSX Transp.*, 6 F3d 727 (11th Cir. 1993).

public roads and embankments over railroad tracks.[5] See *Southern R. Co. v. Brooks*, 112 Ga. App. 324 (1) (145 SE2d 76) (1965). The GCPT redelegated these obligations to local and state government. OCGA § 32-6-197 (b) provides:

> It shall be the duty of the county or the municipality to maintain at its own expense the drainage, surface, pavement, approaches, and guardrails of all overpasses involving railroads on its respective public road system. It shall be the duty of the railroad involved to maintain at its own expense any floors constructed of wood and the foundations, piers, abutments, and superstructures of all overpasses on the county or municipal public road system.

Thus, under the GCPT, the statutory duty to maintain the public road and any warning devices thereon leading to the former site of the timber bridge was exclusively that of the county, both at the time the bridge was removed and at the time of the decedent's injury.[6]

2. Appellants contend, and the Eleventh Circuit questions whether, there remains a common law duty independent of the GCPT, requiring CSXT to guard the safety of those who may be injured by an inherently dangerous condition and nuisance which it allegedly caused and maintained on its land immediately adjacent to the public highway. Appellants rely on certain authority of this Court in support of their position, particularly *Nashville, Chattanooga &c. R. Co. v. Cook*, 177 Ga. 196 (170 SE 28) (1933) and *Intl. Paper Realty Co. v. Bethune*, 256 Ga. 54 (344 SE2d 228) (1986).

In *Nashville, Chattanooga*, a public road ran perpendicular to the railroad track and ended abruptly adjacent to the railroad's right-of-way. Between the end of the road and the railroad tracks, but on the railroad's right-of-way abutting the public road, there was a ditch created and maintained by the railroad company. Plaintiff asserted that the defendant railroad was negligent in creating and maintaining

---

[5] Ga. Code Ann. § 94-503, required that:
All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws.

[6] This conclusion is bolstered by OCGA §§ 32-6-50 and 32-6-51 (a), which place the exclusive duty in the governmental body to install and maintain traffic control devices on public roads (including railroad crossings), and which statutorily *prohibit* private entities, including railroads, from placing traffic control devices on the public roads. An exception is enumerated with respect to railroad crossings at grade on the state highway system; at such crossings the Department of Transportation is required to place and maintain traffic control devices on the public road and the railroad is required to erect and maintain a railroad crossbuck sign. See in this context *City of Fairburn v. Cook*, 188 Ga. App. 58 (1) (372 SE2d 245) (1988).

the ditch or excavation on its right-of-way, and in failing to erect and maintain barriers where the pavement terminated. It was held:

> "Where immediately at the end of a paved road, and upon the property of a landowner abutting the end of the road, there is knowingly and negligently maintained by the landowner, without rails or barriers, an excavation or ditch . . . , the owner of the land is liable in damages for injuries received by a person traveling along the roadway at night who, in the exercise of due care and without negligence, runs into the ditch or excavation."

Id. at 198-199.

Assuming arguendo that *Nashville, Chattanooga*, imposes a common law duty of care which survived the GCPT, we do not construe it to impose an obligation on CSXT to erect signs or barriers to warn drivers of the hazard created by the terminus of County Road 77. The duty in *Nashville, Chattanooga*, arose because the railroad landowner created and maintained an excavation, or artificial condition that amounted to a nuisance located on private property.[7] The hazard alleged here, i.e., the abrupt terminus of the public road without adequate warnings, was situated on the public road,[8] and was neither created nor maintained by CSXT. There is no showing that the act of removing the bridge, the sole contractual obligation assumed by CSXT, was accomplished in a negligent manner; and it was the county which was obligated, both contractually and statutorily, to maintain the condition by furnishing adequate barricades.[9] The duty established in *Nashville, Chattanooga* does not apply.

Nor does *Bethune* create a basis for recovery in the present case. There, we extended a private landowner's liability for damages to a child who was injured on adjacent public property because of a protruding iron surveying pin which defendants had placed in the ground to mark their property boundary. We defined the duty of the land-

---

[7] A distinction was drawn between natural and artificial conditions. While an adjacent landowner may not be obligated to erect barriers protecting against a natural condition, a landowner who creates and maintains an artificial condition which renders travel unsafe, is under a duty to protect travelers in the exercise of due diligence from injury. *Nashville, Chattanooga*, supra at 201.

[8] By statutory definition, the bridge or overpass was a "public road." OCGA § 32-1-3 (24) (B) and (F).

[9] Furthermore, liability of the landowner in *Nashville, Chattanooga*, extended only to those persons who were without negligence and exercised due care. As the district court noted, there was evidence that toxicology tests performed on the decedent's eye fluid showed an alcohol concentration of .138 grams at the time of his death; however, because the court's ruling was not dependent on this finding it was deemed unnecessary to determine the degree, if any, of Kitchen's intoxication.

owner as follows:

> [A] landowner may not, without incurring a duty, maintain an artificial condition so situated that persons lawfully using the public way may, by accident or some force not their own fault, fall upon and be injured by the artificial condition. [Cits.] If an artificial condition exists under these circumstances, the landowner owes a duty of care to guard, cover or protect it for the safety of those on the public way.[10]

Id. at 55.

CSXT breached no common law duty of care owed to appellants in that it neither created nor maintained an artificial condition which gave rise to Kitchen's injuries.

3. Nor is CSXT liable to appellants for the creation and maintenance of a public nuisance. "A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." OCGA § 41-1-2. The undisputed evidence showed that during the nine years prior to Kitchen's death, no other vehicle had ever gone over the barricades marking the approaches to the former bridge.

> "Inasmuch as a public nuisance must injure *all* members of the public who come in contact with it, [the evidence] to the contrary effectively erased [appellants'] public nuisance cause of action. . . ." [Cit.]

*Zellers v. Theater of the Stars*, 171 Ga. App. 406, 409 (3) (319 SE2d 553) (1984). Moreover, as previously noted, CSXT had no role in the creation or maintenance of the condition which gave rise to appellants' damages.

*Certified question answered in the negative. All the Justices concur, except Benham, P. J., and Carley, J., who dissent. Sears, J., disqualified.*

DECIDED FEBRUARY 27, 1995 —
RECONSIDERATION DENIED MARCH 20, 1995.

*Gerard & Mathews, William T. Gerard, Billy E. Moore,* for appellants.
*Alston & Bird, Jack H. Senterfitt, Linda G. Carpenter, Robin G.*

---

[10] The Court reiterated that due care on the part of the damaged party is the sine qua non of any finding of liability in "adjacent landowner" or "artificial condition" cases.