**CSX TRANSPORTATION, INC., Plaintiff,**

v.

**TRISM SPECIALIZED CARRIERS, INC. and The Continental Insurance Company, Defendants.**

**Civil No. 2:95–CV–41–WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

June 4, 1998.

Reconsideration Denied June 25, 1998.

Matthew D. Williams, Casey, Gilson & Williams, Atlanta, GA, for Plaintiffs.

Robert Claiborne Lamar, David William Davenport, Lamar, Archer & Cofrin, Atlanta, GA, for Defendants.

## ORDER

O'KELLEY, Senior District Judge.

The court conducted a week long jury trial in the captioned case beginning April 13, 1998. After the evidence was presented, the parties moved for judgment as a matter of law. The court denied defendant Trism Specialized Carriers, Inc.'s motion. The court denied plaintiff CSX Transportation, Inc.'s motion as to the complaint and granted plaintiff's motion as to defendant's counterclaim and defendant's affirmative defenses.[1] The counterclaim and affirmative defenses were not presented to the jury. The trial ended with a hung jury on April 20, 1998. The court declared a mistrial and placed the case on the June 1, 1998 trial calendar.

On May 4, 1998, plaintiff memorialized its earlier oral motion for judgment as a matter of law [138–1]. Plaintiff moves the court to enter judgment in favor of plaintiff on the complaint. The court finds that the issue of whether the truck driver exercised ordinary care is a question of fact for the jury to decide. Accordingly, plaintiff's motion for judgment as a matter of law on the complaint is hereby DENIED.

 With respect to defendant's counterclaim, the issue before the court at trial was whether the railroad had a duty to install adequate warning devices and signals at the Cedar Creek crossing. The parties submitted trial briefs to the court on the issue [113–1, 122–1]. The court verbally ruled, prior to closing arguments and the charge to the jury, that Georgia statutory law precluded or overruled any such common law duty. The following order will memorialize the court's prior ruling.

In 1973, the Georgia Code of Public Transportation ("GCPT") was enacted "to revise, classify, consolidate and repeal ... other laws relating to all public roads [and] bridges, ... and to establish new laws relating thereto ...." *Kitchen v. CSX Transportation, Inc.*, 265 Ga. 206, 207, 453 S.E.2d 712 (1995)(*citing* Ga.L.1973, p. 947.; O.C.G.A.

§ 32–1–1 *et seq.*). The purpose and legislative intent of the GCPT is further set out in O.C.G.A. § 32–1–2, as follows: "to provide a code of statutes for the public roads and other transportation facilities of the state, the counties, and municipalities of Georgia. The legislative intent is to provide an effective legal basis for the organization, administration, and operation of an efficient, modern system of public roads and other modes of transportation." O.C.G.A. § 32–1–2.

With respect to the duty to install adequate warning devices and signals at railroad crossings, the GCPT places that duty upon the governmental body responsible for the road which crosses the railroad tracks. O.C.G.A. § 32–6–50 provides in relevant part:

(a) The department shall promulgate uniform regulations governing the erection and maintenance on the public roads of Georgia of signs, signals, markings, or other traffic-control devices, such uniform regulations to supplement and be consistent with the laws of this state. Insofar as practical, with due regard to the needs of the public roads of Georgia, such uniform regulations shall conform to the recommended regulations as approved by the American Association of State Highway and Transportation Officials.

(b) In conformity with its uniform regulations, the department shall place and maintain, or cause to be placed and maintained, such traffic-control devices upon the public roads of the state highway system as it shall deem necessary to regulate, warn, or guide traffic, except that the department shall place and maintain a sign for each railroad crossing at grade on the state highway system, warning motorists of such crossing, provided that each railroad company shall also erect and maintain a railroad crossbuck sign on its right of way at every such crossing. The department may remove or direct removal of all traffic-control devices and signs which are erected on the state highway system by any gov-

---

1. Defendant argues that its claim that the railroad is liable for failing to notify the county of the dangerousness of the crossing remains pending before the court. The court disagrees. The claim is not set forth in the pretrial order nor in the complaint. Defendant failed to present evidence on the issue at trial. Accordingly, the court finds that the claim was not alleged. Even assuming that the claim was properly alleged, the lack of evidence presented at trial requires that a directed verdict be entered in favor of plaintiff on the claim.

erning authority without the permission of the department.

(c) In conformity with the uniform regulations of the department, counties and municipalities shall place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic except that counties and municipalities also shall erect and maintain a sign for each railroad crossing at grade on their respective county road or municipal street systems, warning motorists of such crossing. Furthermore, each railroad company shall erect and maintain a railroad crossbuck sign on its right of way at all such crossings.

. . . . .

O.C.G.A. § 32–6–50(a)–(c). In addition, O.C.G.A. § 32–6–51(a) provides:

(a) It shall be unlawful for any person to erect, place, or maintain within the right of way of any public road any sign, signal, or other device except as authorized by subsection (d) of this Code section or as required or authorized by Code Section 32–6–50 or any other law.

O.C.G.A. § 32–6–51(a). These two provisions, working together, place the exclusive duty upon the governmental body to install adequate warning devices and signals at railroad crossings.

Several courts have considered this issue since the 1973 enactment of the GCPT and have concluded that the railroad has the duty to install adequate warning devices and signals at railroad crossings. However, this court finds that the prior cases rely upon the common law which existed prior to the enactment of the GCPT and do not address the issue in its current posture. Accordingly, the cases can be distinguished from this court's order. Moreover, this court's opinion follows the only Supreme Court of Georgia case to have addressed the issue.

In *Kitchen v. CSX Transportation, Inc.*, 265 Ga. 206, 453 S.E.2d 712 (1995), parents of a driver who was killed after driving off an embankment into a railroad bed brought a wrongful death action against county officials and the railroad. *Id.* The Supreme Court of Georgia held that "under the GCPT, the statutory duty to maintain the public road

and any warning devices thereon leading to the former site of the timber bridge was exclusively that of the county, both at the time the bridge was removed and at the time of the decedent's injury." *Id.* at 208, 453 S.E.2d 712. The Supreme Court then stated in a footnote that its holding was "bolstered by O.C.G.A. §§ 32–6–50 and 32–6–51(a), which place the exclusive duty in the governmental body to install and maintain traffic control devices on public roads (including railroad crossings), and which statutorily prohibit private entities, including railroads, from placing traffic control devices on the public roads." *Id.* at 208 n. 6, 453 S.E.2d 712.

Defendant cites to three post–1973 Georgia Court of Appeals decisions in support of its position that railroads have a common law duty to install adequate warning devices at railroad crossings. *Central of Georgia Ry. Co. v. Markert*, 200 Ga.App. 851, 410 S.E.2d 437 (1991); *Wall v. Southern Ry. Co.*, 196 Ga.App. 483, 396 S.E.2d 266 (1990); *Southern Ry. Co. v. Georgia Kraft Co.*, 188 Ga. App. 623, 373 S.E.2d 774 (1988).

In *Southern Ry. Co. v. Georgia Kraft Co.*, the trial court charged the jury that it was to decide whether the railroad was negligent in failing to employ additional precautions at the crossing where the collision occurred. *Georgia Kraft*, 188 Ga.App. at 624, 373 S.E.2d 774. The railroad asserted that this charge was incorrect because the Georgia Department of Transportation is responsible for deciding which warnings are to be used at particular crossings. *Id.* The Court of Appeals rejected the railroad's argument and cited one of its prior cases as authority for its ruling. *Id.* The Court of Appeals quoted *Wright v. Dilbeck*, 122 Ga.App. 214(16), 176 S.E.2d 715 (1970), and held that "[a]n act or omission may amount to negligence under the particular facts and circumstances, although there is no statute so declaring." *Georgia Kraft*, 188 Ga.App. at 624, 373 S.E.2d 774. The Georgia Court of Appeals failed to consider O.C.G.A. §§ 32–6–50 and 32–6–51(a) or the fact that the GCPT had been enacted after *Wright v. Dilbeck* was decided.

*Wall v. Southern Ry. Co.* involved a pedestrian plaintiff who was struck by one of the defendant railroad's trains while crossing two parallel railroad tracks at their intersection with a city street and brought action against the railroad for his injuries. *Wall,* 196 Ga. App. at 483, 396 S.E.2d 266. When plaintiff approached the tracks, one of the railroad's trains was stopped, blocking half of the crossing. *Id.* at 483–484, 396 S.E.2d 266. After waiting for some time, plaintiff followed two other pedestrians around the stationary train and was struck by another of the railroad's trains traveling on the parallel track. *Id.* at 484, 396 S.E.2d 266. The Georgia Court of Appeals, in considering the trial court's grant of summary judgment in favor of the railroad, cited the *Georgia Kraft* case for the proposition that the failure by the railroad to employ additional precautions "may amount to negligence under the particular facts and circumstances, although there is no statute so declaring." *Wall,* 196 Ga. App. at 485, 396 S.E.2d 266. The Georgia Court of Appeals reversed the trial court and held that triable issues existed as to whether the railroad was negligent. *Id.* at 486, 396 S.E.2d 266. Once again the Georgia Court of Appeals failed to consider O.C.G.A. §§ 32–6–50 and 32–6–51(a).

In *Central of Georgia Ry. Co. v. Markert,* parents of a driver who was killed when his vehicle was struck at a railroad crossing brought a wrongful death action against the defendant railroad. *Markert,* 200 Ga.App. at 851, 410 S.E.2d 437. The Georgia Court of Appeals upheld the trial court's denial of summary judgment on plaintiffs' claim against the railroad of "negligent inadequacy of warning devices at the crossing." *Id.* at 854, 410 S.E.2d 437. The Georgia Court of Appeals cited its prior decision in *Georgia Kraft* and considered O.C.G.A. § 32–6–200. *Id.* at 853–54, 410 S.E.2d 437. The Georgia Court of Appeals did not consider O.C.G.A. §§ 32–6–50 and 32–6–51(a).

Accordingly, based upon the foregoing discussion, the court finds that the Georgia Court of Appeals, in the cases cited by defendant, failed to consider the application of the relevant provisions of the GCPT enacted by the Georgia legislature which supersede the state common law cause of action against railroads for failure to install adequate warning devices at railroad crossings.

Defendant also cites to the United States Supreme Court's decision in *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), and three federal district court cases in support of its position. *Biggers v. Southern Ry. Co.,* 820 F.Supp. 1409 (N.D.Ga.1993); *Watson v. Rail Link, Inc.,* 826 F.Supp. 487 (S.D.Ga.1993); *Earwood v. Norfolk Southern Ry. Co.,* 845 F.Supp. 880 (N.D.Ga.1993).

In *CSX Transportation, Inc. v. Easterwood,* respondent brought an action against the railroad for the wrongful death of her truck driver husband killed in a collision involving one of the railroad's trains and the decedent's truck. 507 U.S. at 661, 113 S.Ct. 1732. Respondent alleged, *inter alia,* that the railroad was negligent under Georgia law for failing to maintain adequate warning devices at the crossing and for operating the train at an excessive speed. *Id.* The district court for the Northern District of Georgia granted summary judgment to the railroad on the ground that both claims were preempted by the Federal Railroad Safety Act, 45 U.S.C. §§ 421–445. 742 F.Supp. 676, 678 (1990). The Eleventh Circuit affirmed in part and reversed in part, holding that respondent's excessive speed claim was preempted but that the claim based upon the absence of adequate warning devices was not. 933 F.2d 1548, 1553–1556 (1991). The Supreme Court affirmed.

Although defendant cites the Supreme Court's decision in *Easterwood* in support of its claim against the railroad for failure to install adequate warning devices, *Easterwood* dealt with federal pre-emption, which is not at issue in this case. The Supreme Court in *Easterwood* followed the Eleventh Circuit's finding of the existence of a common law claim against railroads for failure to install adequate warning devices at grade crossings. The Supreme Court specifically noted that the railroad did not assert that respondent's complaint fails to state a claim under Georgia law. *Easterwood,* 507 U.S. at 665, 113 S.Ct. 1732. The Supreme Court then stated in a footnote that because of the posture of the case, neither party provided "a description of

Georgia statute or case law dealing with train speeds or the duties of railroads with respect to grade crossings." *Id.* at 665 n. 5, 113 S.Ct. 1732.

The Eleventh Circuit, in concluding that "Georgia law recognizes a cause of action for a failure by a railroad to warn adequately of the approach of a train to a grade crossing," cited *Isom v. Schettino*, 129 Ga.App. 73, 199 S.E.2d 89 (1973). Upon review of that case, it appears that the Georgia Court of Appeals relied upon its prior cases in holding that "[t]he appellate courts of Georgia have steadfastly held that it is for a jury to determine as to whether [warning signals] were necessary, and if so, what kinds of warnings were necessary, the absence of which may be, by the jury, accounted negligence." *Isom*, 129 Ga.App. at 75, 199 S.E.2d 89. The Georgia Court of Appeals did not consider the GCPT in making its ruling. The Eleventh Circuit, in finding a common law cause of action for a railroad's failure to install adequate warning devices, also failed to consider the GCPT, specifically O.C.G.A. §§ 32–6–50 and 32–6–51(a). Accordingly, this court finds that the Eleventh Circuit, and thus the Supreme Court, did not specifically address the validity of a common law cause of action under Georgia law for a railroad's failure to install adequate warning devices and signals at grade crossings.

*Biggers v. Southern Ry. Co.*, 820 F.Supp. 1409 (N.D.Ga.1993), involved a fatal collision between decedent's van and one of the defendant railroad's trains at a crossing located within the geographical limits of the City of Duluth, Georgia. *Id.* at 1413. Prior to the collision, the railroad and GDOT had entered into an agreement concerning the installation of signals at the crossing. *Id.* The signals had not been installed at the time of the collision. *Id.* The railroad moved for summary judgment on plaintiff's state common law claim concerning the adequacy of signals on the ground that it was pre-empted by federal law. *Id.* at 1422. The court held that the claim was not pre-empted and accordingly denied summary judgment.[2] *Id.*

The *Biggers* court did not address O.C.G.A. §§ 32–6–50 and 32–6–51(a) when making its ruling. The court addressed only the issue of pre-emption. The issue before the court in this case is not pre-emption. *Easterwood* makes clear that the common law cause of action for a failure by a railroad to warn adequately of the approach of a train to a grade crossing is not automatically pre-empted by federal law. The question before the court in this case is whether the GCPT, specifically O.C.G.A. §§ 32–6–50 and 32–6–51(a), has superseded the common law cause of action.

In *Watson v. Rail Link, Inc.*, 826 F.Supp. 487 (S.D.Ga.1993), parents of the driver involved in a fatal collision with one of the defendant railroad's freight trains at a public crossing brought action against the railroad. *Id.* at 488. Plaintiffs alleged that the railroad failed to maintain adequate warning signs and failed to provide proper signals at the crossing. *Id.* The railroad argued on summary judgment that another defendant, ITT, owned the railroad track and the right of way where the collision occurred. *Id.* at 491. The railroad argued that an agreement between the two placed all duties involving the track and crossing on defendant ITT. *Id.* The court in *Watson* reviewed the agreement and held that the agreement made the safety of the railway crossing the responsibility of both defendants. *Id.* Accordingly, the court denied summary judgment. *Id.*

The court in *Watson* did not consider O.C.G.A. §§ 32–6–50 and 32–6–51(a). It appears that the defendant railroad in *Watson* never questioned whether the common law duty of a railroad to install adequate warning devices at railroad crossings still existed after the 1973 enactment of the GCPT. Accordingly, the court in that case was never given the opportunity to consider the issue.

*Earwood v. Norfolk Southern Ry. Co.*, 845 F.Supp. 880 (N.D.Ga.1993), involved a collision between one of the defendant railroad's trains and a tanker truck at a public grade crossing. *Id.* at 883. The truck driver and the owner of the tanker brought claims

---

**2.** After the court's decision in *Biggers*, the Supreme Court of the United States affirmed the Eleventh Circuit in *Easterwood* and held that the

FRSA did not pre-empt the tort law of grade crossings.

against the railroad alleging, *inter alia*, inadequate warnings. *Id.* The railroad moved for summary judgment on the claim of inadequate warnings arguing that the claim was federally pre-empted. *Id.* at 885–87. The court, applying *Easterwood*, held that the state common law claim was not pre-empted. *Id.*

The *Earwood* court did not consider O.C.G.A. §§ 32–6–50 and 32–6–51(a). It again appears that the railroad failed to raise the question of whether the common law duty of a railroad to install adequate warning devices and signals at railroad crossings still existed after the 1973 enactment of the GCPT. Accordingly, the *Earwood* court was never given the opportunity to consider the issue.

After analyzing the cases and noting that the Supreme Court of Georgia's decision in *Kitchens* was handed down after the aforementioned cases, the court is of the opinion that the GCPT, specifically O.C.G.A. §§ 32–6–50 and 32–6–51(a), supersedes the state common law cause of action against railroads for failure to install adequate warning devices and signals at grade crossings. Accordingly, the court finds that railroads have no duty to install adequate warning devices and signals at grade crossings.

After considering the matter further, the court is now of the opinion that its prior ruling was more in the form of a judgment on the pleadings. The court ruled in essence that defendant failed to state a claim upon which relief could be granted. *See* Fed. R.Civ.P. 12(b)(6). Rule 12(h)(2) of the Federal Rules of Civil Procedure allows judgment to be entered for failure to state a claim upon which relief can be granted at trial. Accordingly, defendant's counterclaim and affirmative defenses against the railroad for failure to install adequate warning devices and signals at the Cedar Creek Crossing are hereby DISMISSED pursuant to Rule 12(b)(6).

 The court also notes at this time the importance of this issue to the resolution of this case. Defendant has represented to the court that it will appeal the court's ruling. The court and the parties are faced with the possibility of a second trial before this court, a trial on damages before a special master,

an appeal by defendant, and a potential third trial if the court's ruling is not upheld. Accordingly, the court finds that the interests of justice and judicial economy would be best served by allowing defendant to appeal the court's ruling at this time.

 Rule 54(b) of the Federal Rules of Civil Procedure provides that when multiple claims are presented in an action, "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). In determining that there is no just reason for delay, a trial court should "balance judicial administrative interests and relevant equitable concerns." *Ebrahimi v. City of Huntsville Board of Educ.*, 114 F.3d 162, 166 (11th Cir.1997) (*citing Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980)). The Eleventh Circuit has held that the determination should be limited to instances in which "immediate appeal would alleviate some danger of hardship or injustice associated with delay." *Ebrahimi*, 114 F.3d at 166 (*citing Southeast Banking Corp. v. Bassett*, 69 F.3d 1539, 1547 n. 2 (11th Cir.1995)).

The court finds that there is no just reason to delay entering final judgment on defendant's counterclaim and affirmative defenses. The court specifically finds that an immediate appeal would alleviate the hardship associated with the delay in that the potential for a third trial would likely be eliminated. The court is of the opinion that the issue presented by defendant's counterclaim and affirmative defenses is one appropriate for review by the Supreme Court of Georgia. Accordingly, the court recommends that the issue decided herein be certified by the Eleventh Circuit Court of Appeals to the Supreme Court of Georgia. The parties should move for certification to the Supreme Court of Georgia on appeal. Once a definitive answer as to defendant's counterclaim and affirmative defenses is provided by the Supreme Court of Georgia, the parties will be able to reevaluate their positions and possibly resolve the case without further judicial involvement.

The court also notes that it has another case pending before it in which the issue decided herein may be controlling.

Accordingly, the clerk is hereby directed to enter final judgment in favor of plaintiff on defendant's counterclaim and affirmative defenses pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

### Summary

Plaintiff's motion for judgment as a matter of law is hereby DENIED [138–1]. Defendant's counterclaim and affirmative defenses are hereby DISMISSED. The clerk is hereby directed to enter final judgment in favor of plaintiff on defendant's counterclaim and affirmative defenses pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Defendant has represented to the court its intention to appeal the court's ruling. Accordingly, all other pending motions are hereby DENIED AS MOOT at this time [88–1, 88–2].