[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/26/99
THOMAS K. KAHN
CLERK

_____

No. 98-8886

_____

D. C. Docket No. 2: 95-CV-41-WCO

CSX TRANSPORTATION, INC.,

Plaintiff-Counter-Defendant-Appellee,

versus

TRISM SPECIALIZED CARRIERS, INC.,

Defendant-Counter-Claimant-Appellant,

CONTINENTAL INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 26, 1999)**

Before COX, Circuit Judge, FAY, Senior Circuit Judge, and NANGLE*, Senior District Judge.

_____

*Honorable John F. Nangle, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

PER CURIAM:

This appeal from the grant of judgment on the pleadings for the plaintiff-cross-defendant involves a negligence action arising from a collision between a tractor-trailer and a train on Georgia's Cedar Creek Road grade crossing. Because the Georgia courts have interpreted O.C.G.A. §§ 32-6-50 and 32-6-51 to abrogate the railroad's duty to install warning devices at railroad crossings, we find no error and affirm.

## FACTS AND BACKGROUND

This litigation arises out of a collision between a Trism Specialized Carriers (Trism) tractor-trailer and a CSX Transportation (CSXT) locomotive. The facts relevant to the disposition of this case are as follows.

Rodney Russell, an employee of Trism, was delivering a piece of machinery to a Ford dealership in Barrow County Georgia. The route Mr. Russell followed caused him to travel east on Georgia's Highway 8, and then head north on Cedar Creek Road. As Mr. Russell made his left turn to head south on Cedar Creek Road, he crossed over the railroad tracks for the first time. These tracks run parallel to, and are just north of, Highway 8[1].

Mr. Russell proceeded to the Ford dealership, dropped off the piece of machinery, and turned the tractor-trailer around to head back south on Cedar Creek

---

[1]Georgia's Highway 8 runs in an east-west direction. Similarly, the railroad tracks run in an east-west direction and are located just north of Highway 8. Cedar Creek Road dissects both the railroad tracks and Highway 8, running north and south.

Road. As he approached the railroad tracks for the second time, just north of Highway 8, Mr. Russell brought his vehicle to a halt to look for an oncoming train. The Cedar Creek Road grade crossing has a single cross-buck at the intersection, but there are no bells, signal lights or other device to warn of an approaching train. As Mr. Russell saw nothing to indicate the presence of an approaching train, he proceeded to cross the tracks. After driving onto the train tracks, Mr. Russell first noticed the CSXT train approaching from the west or right hand side. He accelerated in attempt to clear the vehicle, but was only able get the cab portion of the tractor-trailer clear of the oncoming train. The flatbed was struck and the collision resulted in a major train derailment.

On March 23, 1995, CSXT filed suit against Trism and The Continental Insurance Company, Trism's insurer, claiming the derailment and resulting damage was a result of Trism's negligence. In response, Trism asserted the defense of contributory negligence and filed a counterclaim contending CSXT's negligent failure to install adequate warning devices and signals at the Cedar Creek Road grade crossing was the cause of the collision. The case proceeded to trial and at the close of all evidence, CSXT moved for judgment as a matter of law on its complaint and on Trism's counterclaim. The district judge denied CSXT's motion with respect to its complaint. With respect to Trism's counterclaim, however, the district judge entered judgement for CSXT ruling that Georgia statutory law overruled any common law duty to install warning devices or signals at the Cedar Creek Road grade crossing.

Trism filed this appeal, claiming the latter ruling by the district judge was erroneous.

## **DISCUSSION**

The issue before this Court is whether §§ 32-6-50 and 32-6-51of the Georgia Code of Public Transportation (GCPT) work in conjunction to abrogate a railroad's common law duty to install devices to warn of approaching trains at grade crossings. After review of the statutes involved and the pertinent case law as announced by the Georgia state courts, we hold that they do.

As a federal court sitting in diversity, we are required to apply the law as declared by the state's highest court. Erie R.R. Co. v. Tompkins, 58 S.Ct. 817, 822, 304 U.S. 64, 78, 82 L.Ed. 1188 (1938). The Georgia Supreme Court, however, has not answered whether the railroad's common law duty to install warning devices at grade crossings survives the enactment of the GCPT. In the absence of authority directly on point, we must determine the issues of state law as we believe the Georgia Supreme Court would. See Towne Realty, Inc. v. Safeco Ins. Co. of Am., 854 F.2d 1264, 1269 (11th Cir. 1988).

Trism argues, and we acknowledge, that Georgia law is replete with case law recognizing a railroad's duty to alert drivers of the danger of an oncoming train at grade crossings. See, e.g., Central of Georgia Ry. Co. v. Larsen, 91 S.E. 517 (Ga. App. 1917); Southern Ry. Co. v. Lowry, 200 S.E. 553 (Ga. App. 1927); Ison v. Schettino 199 S.E.2d 89(Ga. App. 1973). Even after the GCPT was enacted, the

4

Georgia courts recognized liability for railroad companies who failed to install adequate devices to warn of the danger of an approaching train. See Central of Georgia R.R. Co. v. Markert, 410 S.E.2d 437 (Ga.App. 1991); Wall v. Southern Ry. Co., 396 S.E.2d 266 (Ga. App. 1990); Southern Ry. Co. v. Georgia Kraft Co., 373 S.E.2d 774, 776 (Ga. App. 1988)(overruled by Evans Timber Co. Inc. v. Central of Georgia R.R. Co., (Ga.App. 1999)). These cases, however, relied on precedent decided prior to the enactment of the GCPT and neglected to consider §§ 32-6-50 and 32-6-51's effect on the common law.[2] Therefore, we turn to the decisions of the Georgia Supreme Court in Kitchen v. CSX Transportation, Inc., 453 S.E.2d 712 (Ga.

---

[2]Section 32-6-50 of the GCPT places the duty to install warning devices on the governmental body responsible for the road that crosses the railroad tracks by stating, in pertinent part:

(a)The department shall promulgate uniform regulations governing the erection and maintenance on the public roads of Georgia of signs, signals, markings, or other traffic-control devices, such uniform regulations to supplement and be consistent with the laws of this state.

(b)In conformity with its uniform regulations, the department shall place and maintain, or cause to be placed and maintained, such traffic-control devices upon the public roads of the state highway system as it shall deem necessary to regulate, warn, or guide traffic, except that the department shall place and maintain a sign for each railroad crossing at grade on the state highway system, warning motorists of such crossing, provided that each railroad company shall also erect and maintain a railroad crossbuck sign on its right of way at every such crossing.

(c)In conformity with the uniform regulations of the department, counties and municipalities shall place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic except that counties and municipalities also shall erect and maintain a sign for each railroad crossing at grade on their respective county road or municipal street systems, warning motorists of such crossing. Furthermore, each railroad company shall erect and maintain a railroad crossbuck sign on its right of way at all such crossings.

O.C.G.A. § 32-6-50 (a)-(c).

Section 32-6-51(a), in addition, makes that duty exclusively that of the government by prohibiting the railroad from erecting any sign or signal other than a crossbuck, providing:

(a)It shall be unlawful for any person to erect, place, or maintain within the right of way of any public road any sign, signal, or other device except as authorized by subsection (d) of this code or as required or authorized by Code Section 32-6-50 or any other law.

O.C.G.A. § 32-6-51(a).

1995) and the Georgia Court of Appeals in <u>Evans Timber Co. Inc. v. Central of Georgia R.R. Co.</u>, (Ga.App. 1999) as they provide a better barometer for forecasting the law as would be decided by the Supreme Court of Georgia.

In <u>Kitchen</u>, the Georgia Supreme Court held that under the GCPT, the "statutory duty to maintain the public road and any other warning device [on which an overpass had been removed] was exclusively that of the county...." <u>Kitchen</u>, 453 S.E.2d at 714. Although that is not precisely the issue before this court, the case is important because the Georgia Supreme Court noted that their conclusion was "bolstered by OCGA §§ 32-6-50 and 32-6-51(a), which place the exclusive duty in the governmental body to install and maintain traffic control devices on public roads (including railroad crossings), and which statutorily prohibit private entities, including railroads, from placing traffic control devices on public roads." <u>Kitchen</u>, 453 S.E.2d at 714 n.6. While this statement may be considered dicta, it is particularly insightful as it directly speaks to the issue we address today.

Moreover, the <u>Kitchen</u> decision caused the Georgia Court of Appeals to revisit the application of the GCPT to the common law cause of action for a railroad's negligent failure to install warning devices at grade crossings. In <u>Evans Timber</u>, a claim was filed against a railroad company alleging the railroad was negligent in "failing to install warning devices, such as gates, lights, or bells, at the grade crossing to warn motorists of approaching trains." <u>Evans Timber</u>. That court held that the trial court properly granted the railroad's motion for directed verdict, holding that §§ 32-6-

6

50 and 32-6-51(a) "clearly delegated responsibility for the public road, including traffic control devices, warning signals, and protective devices to the governmental entities and removed any such responsibility from private parties." Evans Timber. Without some persuasive indication that the state's highest court would rule otherwise, we are bound to apply the law as decided by the Georgia Court of Appeals. See Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983)(stating a federal court is required to follow intermediate state court's decision absent some clear indication the state's highest court would rule otherwise).

In light of the above decisions, we are convinced that the district court correctly ruled that §§ 32-6-50 and 32-6-51(a) of the GCPT statutorily overrule the state common law cause of action against railroads for negligent failure to install adequate warning devices at public grade crossings.[3] Accordingly, we find no error.

AFFIRMED.

---

[3]We recognize, as argued by counsel for Trism, that such an action by the Georgia Legislature is surprising; however, if this result is contrary to the intent of the legislative branch it can be corrected rather quickly. As a federal court bound by state law, we are obliged to apply these statutes in accord with the interpretations rendered by the state court of appeals.