## A95A2428. G.I.R. SYSTEMS, INC. v. LANCE.
(466 SE2d 597)

BLACKBURN, Judge.

G.I.R. Systems, Inc. (G.I.R.) appeals the trial court's judgment permitting a minority stockholder's application to inspect certain corporate records.

G.I.R. is a Georgia corporation that produces yarn products used in making carpet. Grady H. Lance is a former officer and director of G.I.R. While he resigned from the company in 1992 and established his own competing business, Lance retained approximately 30 percent of G.I.R.'s stock. The remainder of the company's stock belongs to Gordon I. Rehberg, G.I.R.'s president and executive officer.

On May 31, 1991, prior to Lance's departure, G.I.R., Lance and Rehberg entered into a stock purchase agreement stipulating the fair market value of the stock at $49.15 per share. The agreement also provided that, in the absence of majority shareholder action, the stock's fair market value would be automatically adjusted in line with the company's earnings. As no majority action was taken until 1994, Lance asserts the value of the stock rose to approximately $55 per share in relation to the company's earnings. In March 1994, Rehberg, acting as the majority shareholder, voted to lower the value of the stock to $25 a share.

On September 2, 1994, Lance sent G.I.R. a letter requesting a number of different corporate records citing as authority OCGA § 14-2-1602. Lance purportedly requested these documents to help him in assessing the value of his stock. G.I.R. responded on September 15, 1994, supplying some of the requested documents but refusing to produce others on the grounds that the records were sought for an improper purpose and were not subject to production under OCGA § 14-2-1602. Lance filed the underlying complaint in the Superior Court of Whitfield County seeking the court to order G.I.R. to submit certain corporate records for inspection. In response to Lance's subsequent motion for summary judgment, the trial court did order G.I.R. to produce certain records and outlined the terms under which the production should take place. G.I.R. appeals the trial court's decision.

OCGA § 14-2-1602 (c) provides that a shareholder is entitled to inspect and copy various corporate records — including certain meeting minutes, accounting records and shareholder records — if he gives the corporation written notice of his demand at least five business days prior to the planned inspection. Pursuant to OCGA § 14-2-1602 (d), a shareholder may inspect and copy these records only if: "(1) His demand is made in good faith and for a proper purpose that is reasonably relevant to his legitimate interest as a shareholder; (2) He describes with reasonable particularity his purpose and the records he desires to inspect; (3) The records are directly connected with his

purpose; and (4) The records are to be used only for the stated purpose." In determining whether a shareholder's purpose is proper or whether the documents requested are relevant to the shareholder's purpose, a great deal of discretion is placed in the trial court. *Riser v. Genuine Parts Co.*, 150 Ga. App. 502, 505 (258 SE2d 184) (1979).

1. G.I.R. asserts that some of the factual findings on which the trial court based its decision were erroneous. First, G.I.R. disputes the trial court's determination that it was bound by the stock purchase agreement. On deposition, Rehberg testified that the fair market value set forth in the stock purchase agreement was based on the amount of life insurance proceeds that could be obtained by the shareholders, and thus, the $49.15 per share value was applicable only in the event one of the shareholders died. However, the stock purchase agreement places no such condition on the stock's fair market valuation. Because parol evidence, such as Rehberg's testimony, is not admissible to vary the terms of a written contract, we find no error in the trial court's determination that the parties were bound by the stock purchase agreement. See OCGA § 13-2-2 (1).

G.I.R. also asserts that the trial court erred in determining that since Lance had left the corporation, the stock had been "revalued" from approximately $55 to $25 per share. Only the unsworn averments of counsel support the proposition that the stock reached a value of $55 per share. However, pursuant to the stock purchase agreement, the stock's fair market value in the spring of 1991 was $49.15 per share. The next formal assessment of the stock's worth, made less than three years later and occurring after Lance left the company, significantly reduced the stock's value to $25 per share. Clearly, Lance had a legitimate reason to question the change in the assessed value of the stock. While there is no evidence to support the trial court's determination that the stock was valued at $55 in the spring of 1994, this fact would not have materially changed any portion of the trial court's ruling regarding Lance's ability to inspect G.I.R.'s records.

2. G.I.R. asserts that the trial court erred by determining that the records were being sought for a proper purpose. Particularly, G.I.R. argues that Lance was seeking the records due to his status as a competitor to G.I.R. G.I.R. also infers that Lance's inspection request was motivated by a desire to harass G.I.R., noting that Lance has filed a number of different lawsuits against G.I.R. since leaving the company. The trial court rejected these arguments, determining that Lance requested the inspection so as to ascertain the financial condition of the corporation and its stock, a purpose which the trial court found to be proper.

As outlined above, the trial court has wide discretion in determining if a shareholder is seeking to inspect corporate records for a

proper purpose. *Riser,* supra. As the trial court's determination was supported by evidence that the value of Lance's stock had been drastically reduced by the acts of Rehberg, G.I.R.'s majority shareholder, we will not disturb this finding on appeal.

3. G.I.R. also contends that the trial court erred in requiring a full audit by Lance's certified public accountant and requiring G.I.R. to pay one-half of the accountant's fee. A close reading of its order reflects that the trial court did not mandate a full audit. Rather, the trial court ordered that Lance's accountant be allowed to inspect those records held by G.I.R. that would customarily be "available for an audit engagement, in compliance with the American Institute of Certified Public Accountants Statement on Auditing Standards." Thus, the trial court was merely delineating those records subject to production, not requiring an audit take place. A trial court has wide discretion in determining what corporate records are relevant to a shareholder's purpose. *Riser,* supra. Considering Lance's purpose, to determine the value of his stock, the trial court did not abuse its discretion in requiring G.I.R. to produce those records customarily used in performing an audit.

G.I.R. asserts that the trial court erred in ordering it to split with Lance the cost of having his certified public accountant inspect the corporate records. We agree that the trial court exceeded its authority in this respect. The authority of a court to order a corporation to share in the expense of an inspection is found in OCGA § 14-2-1604. OCGA § 14-2-1604 (c) provides: "If the court orders inspection and copying of the records demanded, it shall also order the corporation to pay the shareholder's costs (including reasonable attorneys' fees) *incurred to obtain the order* unless the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded." (Emphasis supplied.) This section is clearly inapplicable as the costs assessed to G.I.R. were not costs incurred by Lance in obtaining the inspection order. Further, this section is inapplicable in light of the trial court's express determination that G.I.R. acted in good faith when it denied Lance's inspection application.

The comment to OCGA § 14-2-1604 provides further guidance into the authority of a trial court to assess costs. It provides: "[w]hile subsection (a) provides that the corporation shall bear the *costs of inspection and copying* of [basic corporate records such as articles of incorporation, bylaws, resolutions, etc. not at issue in the present matter], subsection (c) does not address who should bear the *cost of reproducing* other records ordered by the court; this is a matter for the courts to decide in light of the policy of the Code that costs of reproduction are generally the responsibility of the requesting shareholder and should be assessed against him." (Emphasis supplied.)

When interpreting a statute "[w]e are required to look for the intent of the legislature and construe statutes to effectuate that intent giving all words their ordinary significance." *Griffin-Spalding County School System v. Daniel*, 215 Ga. App. 567, 568 (451 SE2d 480) (1994). In its comment to OCGA § 14-2-1604, the legislature equates the "costs of inspection and copying" with the "cost of reproducing" corporate records. Other costs involved in an inspection are not mentioned despite the fact that the legislature clearly contemplated the various costs that shareholders could incur in attempting to exercise their inspection rights, particularly the attorney fees incurred in obtaining an inspection order. Because the legislature expressly provided that certain costs be recovered but made no provision for expenses incurred by a shareholder in having an accountant review corporate records, the legislature did not intend for these costs to be assessed to the corporation. See also Fletcher Cyclopedia of the Law of Private Corporations (1995 ed.), § 2255 (the costs of an expert to assist in a shareholder's inspection of corporate records should be borne by the shareholder). Thus, the trial court exceeded its authority in ordering G.I.R. to share in the inspection costs incurred by Lance's accountant.

4. G.I.R. asserts that the trial court's inspection order is in essence a mandatory injunction and violates the specificity standards that injunctive orders must meet, citing to *Hendrix v. Hendrix*, 254 Ga. 662, 663 (333 SE2d 596) (1985). This enumeration is without merit. While an inspection order may, in some respects, be similar to a mandatory injunction, they are two different creatures. G.I.R. has given no authority or analysis as to why the requirements necessary for a mandatory injunction, a distinctly equitable remedy, should be applied in the context of an order requiring a corporation to submit its records to a shareholder inspection, a statutory remedy. Further, we find the trial court's inspection order to clearly and specifically outline those records that are subject to inspection.

5. In its final enumeration, G.I.R. contends that the court erred in granting Lance's motion for summary judgment prior to ruling on G.I.R.'s pending motion to compel Lance to more fully respond to various discovery requests. We have reviewed the motion to compel and find that none of the contested discovery responses would have materially impacted the trial court's decision to permit Lance's inspection. " 'Although the grant of summary judgment while a motion to compel discovery is pending is generally not condoned, where, as here, the disallowed discovery would add nothing of substance to the party's claim, reversal is not required. (Cit.)' [Cit.]" *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481, 483-484 (445 SE2d 297) (1994).

In light of the above, the trial court's order is affirmed, except for

its mandate that G.I.R. share with Lance the cost of having his accountant review the G.I.R. records specified by the court, which is reversed.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Andrews, J., concur.*

### ON MOTION FOR RECONSIDERATION.

Upon motion for reconsideration, G.I.R. asserts that with regard to Division 1, Lance shared Rehberg's misconception that the values outlined in the stock purchase agreement only applied in the event of Lance's death. Thus, G.I.R. argues, the stock purchase agreement should not be governed by the parol evidence rule but by the doctrine of mutual mistake. It is not necessary for us to address this claim as regardless of how the stock purchase agreement is construed, evidence supports the trial court's ultimate conclusion that Lance acted with a proper purpose in seeking to inspect G.I.R.'s corporate records.

As outlined above, assuming the stock purchase agreement is binding, the stock's fair market value in the spring of 1991 was set at $49.15 per share and less than three years later, after Lance departed from G.I.R., was reduced to $25 by the unilateral act of Rehberg. In light of this drastic reduction, Lance could legitimately question the change in value assessed to his stock. Should the values set forth in the stock purchase agreement not be considered binding in this situation, Lance has an even stronger case for questioning how the $25 per share value was reached. Apart from the stock purchase agreement, the record contains no evidence of the value of Lance's stock. In fact, Rehberg offered affidavit testimony that a fair market value for G.I.R.'s stock had never been determined prior to the spring of 1994. In light of the acrimonious relationship between Lance and Rehberg that is amply evidenced in the record, Lance had a legitimate reason to question how G.I.R., which was controlled by Rehberg, valued its stock. Thus, the binding nature of the stock purchase agreement is immaterial to the court's ultimate conclusion that Lance had a proper purpose in seeking to inspect certain G.I.R. records.

Also, in its motion for reconsideration, G.I.R. asserts that the trial court erred in failing to conduct an evidentiary hearing prior to rendering its judgment. As G.I.R. did not initially enumerate this conduct by the trial court as error, this issue is not properly presented for appellate review. *McGraw v. State*, 199 Ga. App. 389 (405 SE2d 53) (1991) (appellant is not permitted to enlarge or expand his list of enumerated errors by amendment or argument).

*Motion for reconsideration denied.*

DECIDED NOVEMBER 17, 1995 —
RECONSIDERATION DENIED JANUARY 11, 1996.

John T. Longino, for appellant.

Minor, Bell & Neal, Michael J. Tuck, William F. Jourdain, Robert G. McCurry, Eddy A. Corn, for appellee.