## A99A0174. EVANS TIMBER COMPANY, INC. v. CENTRAL OF GEORGIA RAILROAD COMPANY.

(519 SE2d 706)

BLACKBURN, Presiding Judge.

Evans Timber Company, Inc. (Evans Timber) appeals the trial court's grant of directed verdict to Central of Georgia Railroad Company (Central) on its cross-claim. The trial court found that the Georgia Code of Public Transportation (GCPT), enacted in 1973, preempted the railroad's common-law duty with regard to the installation of protective devices at grade crossings on public roads. Evans Timber also contends the trial court erred in excluding evidence of other accidents at the crossing. For the reasons set forth below, we affirm.

The relevant facts are not in dispute. Plaintiff Wilbert Brezial filed suit against both Evans Timber and Central for injuries he suffered when the train he was operating struck a truck owned by Evans Timber. The collision occurred at a crossing at grade on a public road. Evans Timber filed a cross-claim against Central alleging that Central was negligent in failing to install warning devices, such as gates, lights or bells, at the grade crossing to warn motorists of approaching trains.

1. At the close of trial of the case, the trial court granted Central's motion for directed verdict on Evans Timber's cross-claim finding that the GCPT, OCGA § 32-1-1 et seq., displaced the common-law duty of a railroad to install warning devices at a public road grade crossing. Central argued, and the trial court agreed, that the GCPT delegated responsibility for protective devices at grade crossings to the governmental entity responsible for the road.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Punctuation omitted.) *McCannon v. McCannon*, 231 Ga. App. 601 (1) (499 SE2d 684) (1998).

Prior to the enactment of the GCPT in 1973, Georgia recognized that a railroad could be negligent for the failure to install protective devices at grade crossings on public roads. See *Isom v. Schettino*, 129 Ga. App. 73 (199 SE2d 89) (1973). Even after the enactment of the

GCPT, this court recognized a common-law cause of action against a railroad for the failure to install adequate warning signals. See *Southern R. Co. v. Ga. Kraft Co.*, 188 Ga. App. 623 (5) (373 SE2d 774) (1988); *Wall v. Southern R. Co.*, 196 Ga. App. 483 (396 SE2d 266) (1990); *Central of Ga. R. Co. v. Markert*, 200 Ga. App. 851 (4) (410 SE2d 437) (1991). However, the Supreme Court's decision in *Kitchen v. CSX Transp.*, 265 Ga. 206 (1) (453 SE2d 712) (1995) causes us to revisit the application of the GCPT to a railroad's common-law duty to install protective devices.

In *Kitchen*, supra, our Supreme Court held that pursuant to OCGA § 32-6-197 (b) CSX had no statutory or common-law duty to install warning devices on a public road on which an overpass had been removed. In reaching its holding, the Court emphasized the purpose and intent of the GCPT.

> In 1973, the [GCPT], OCGA § 32-1-1 et seq., Ga. L. 1973, p. 947, § 1, was enacted to revise, classify, consolidate and repeal other laws relating to all public roads and bridges, and to establish new laws relating thereto. Ga. L. 1973, p. 947. The purpose and legislative intent of the GCPT [are] further set out in OCGA § 32-1-2, as follows: to provide a code of statutes for the public roads and other transportation facilities of the state, the counties, and municipalities of Georgia. The legislative intent is to provide an effective legal basis for the organization, administration, and operation of an efficient, modern system of public roads and other modes of transportation.

(Punctuation omitted.) *Kitchen*, 265 Ga. at 207 (1).

The issue before this court, a railroad's common-law duty to install protective devices at a grade crossing on a public road, was not directly addressed in *Kitchen*, which addressed only a duty with respect to overpasses on a public road. However, the *Kitchen* decision provides insightful guidance as the Supreme Court noted:

> OCGA §§ 32-6-50 and 32-6-51 (a) . . . place the exclusive duty in the governmental body to install and maintain traffic control devices on public roads (including railroad crossings), and . . . statutorily *prohibit* private entities, including railroads, from placing traffic control devices on the public roads. An exception is enumerated with respect to railroad crossings at grade on the state highway system; at such crossings the Department of Transportation [(DOT)] is required to place and maintain traffic control devices on the

public road and the railroad is required to erect and maintain a railroad crossbuck sign.

Id. at 208, fn. 6.

As *Kitchen* recognizes, the scope of the GCPT is broad, encompassing not only the highway system, but also "any transportation facility . . . including but not limited to railroads." OCGA § 32-1-3 (18). Accord *Kitchen*, supra. The definition of "public road" is correspondingly broad, including, in part, ferries, overpasses, underpasses, railroad grade crossings, tunnels, signs, signals, markings, or other traffic control devices.

> "Public road" means a highway, road, street, avenue, toll road, tollway, drive, detour, or other way open to the public and intended or used for its enjoyment and for the passage of vehicles in any county or municipality of Georgia, including but not limited to the following public rights, structures, sidewalks, facilities, and appurtenances incidental to the construction, maintenance, and enjoyment of such rights of way: (A) Surface, shoulders, and sides; (B) Bridges; (C) Causeways; (D) Viaducts; (E) Ferries; (F) Overpasses; (G) Underpasses; (H) Railroad grade crossings; (I) Tunnels; (J) Signs, signals, markings, or other traffic control devices; (K) Buildings for public equipment and personnel used for or engaged in administration, construction, or maintenance of such ways or research pertaining thereto; (L) Wayside parks; (M) Parking facilities; (N) Drainage ditches; (O) Canals and culverts; (P) Rest areas; (Q) Truck-weighing stations or check points; and (R) Scenic easements and easements of light, air, view, and access.

OCGA § 32-1-3 (24).

The Court in *Kitchen* recognized that the GCPT delegates comprehensive management and control of public roads exclusively to the governmental entity responsible for the road. See OCGA § 32-6-1 et seq. The GCPT delegates management and control of grade crossings, traffic control devices and signals to the governmental entity because they are part of the public road. Thus, where a public road is a county's responsibility, that county, exclusively, has the duty to "plan, designate, improve, manage, control, construct, and maintain an adequate county road system." OCGA § 32-4-41 (1). See *Purvis v. Virgil Barber Contractor*, 205 Ga. App. 13 (421 SE2d 303) (1992). In addition, the county has the "control of and responsibility for all construction, maintenance, or other work related to the county road system." Id. at 15 (1).

Likewise, the GCPT delegates responsibility for the installation of protective devices on a public road to the governmental entity.

> Whenever, in the judgment of the department in respect to the state highway system, a county in respect to its county road system, or a municipality in respect to its municipal street system, such protection is reasonably necessary for the safety of the traveling public, the department or the county or the municipality may order the protection of a grade crossing by the installation of protective devices.

OCGA § 32-6-200.

> "Protective devices" means gates, flashing light signals, and similar devices or combinations thereof, together with necessary appurtenances, to be installed or in operation at any grade crossing and which comply with the safety standards determined by the department as being adequate at that time for the protection of traffic.

OCGA § 32-1-3 (23).

Thus, the governmental entity responsible for the public road orders the installation of protective devices. OCGA § 32-6-200 (a). Prior to installation, the DOT must approve the plans and specifications for any protective devices. Id.; OCGA § 32-1-3. After the protective device has been ordered and approved by the governmental entities, the railroad has a duty to install the device. OCGA § 32-6-200 (a). Contrary to the dissent's assertion, the statute expressly prohibits a railroad from taking unilateral action and voluntarily installing protective devices: "However, *no work* leading to the installation of protective devices at a grade crossing on a county or municipal public road system shall commence *until and unless* the plan and specifications for such device are approved by the department." (Emphasis supplied.) Id.

This delegation of responsibility was corroborated at trial. The testimony at trial showed that a railroad could not unilaterally install a protective device on a public road. Instead, the appropriate governmental entities first had to order and approve the device. Here, the railroad had not been asked to install a protective device.

Without question, the common-law duty of the railroad, except with respect to initiating and authorizing the installation of protective devices at a railroad crossing, remains in effect. The dissent's premise that the GCPT reaffirmed the common-law duty of a railroad to maintain safe grade crossings ignores the limitations on the railroad's duties under the plain language of the statute. The dissent relies on OCGA § 32-6-190, which places a duty on a railroad to

maintain grade crossings and protective devices *after installation*. OCGA §§ 32-6-190; 32-6-200 (b) (3). The GCPT defines "maintenance" as "the preservation of a public road, including repairs and resurfacing not amounting to construction as defined in this Code section." OCGA § 32-1-3 (15). "Construction" is defined, in relevant part, as: "the paving, striping, restriping, modifying for safety purposes, grading, widening, relocation, reconstruction, or other major improvement of a substantial portion of an existing public road together with all activities incident to any of the foregoing." OCGA § 32-1-3 (6). Under the statute, maintenance does not include installation of protective devices on a public road crossing.

The GCPT precludes a common-law cause of action against a railroad for the failure to install adequate protective devices at a grade crossing on a public road where the railroad has not been requested to do so by the appropriate governmental entity. See *CSX Transp. v. Trism Specialized Carriers*, 9 FSupp.2d 1374 (1998) (holding that the GCPT supersedes a common-law cause of action for the failure to install adequate warning devices and signals at a grade crossing). We expressly overrule *Southern R. Co. v. Ga. Kraft Co.*, supra, which did not consider the effect of the GCPT and which relied upon *Wright v. Dilbeck*, 122 Ga. App. 214 (16) (176 SE2d 715) (1970), a case decided prior to the enactment of the GCPT. *Central of Ga. R. Co. v. Markert*, supra, cited by the dissent, relied upon *Southern R. Co. v. Ga. Kraft Co.* However, *Central of Ga. R. Co.* is distinguishable from the present case as it addressed a grade crossing on a private road, a situation outside the scope of the GCPT.

*Wall v. Southern R. Co.*, supra, cited by the dissent, is also distinguishable. In that case, automatic signaling devices were already installed, and the question was whether additional precautions, such as a flagman, were needed under the particular facts of that case. The court based a common-law duty of the railroad not on the failure to install protective devices but, rather, on other conduct by the railroad.

> The maintaining of cars on sidetracks so as to obstruct the view of persons entering the crossing may be considered by the jury as a separate act of negligence contributing to the injury although other acts of negligence might be alleged in regard to the speed of the train, failure to signal and to provide flagmen, etc. . . . Moreover, the mere presence of safety precautions such as automatic signalling devices neither renders the railroad free from negligence as a matter of law, nor relieves it from adopting such other measures as public safety and common prudence dictate.

(Citations and punctuation omitted.) Id. at 484.

Similarly, under our holding today a railroad is not free from liability as a matter of law. The legislature has simply provided that a railroad cannot be liable for the failure to install a protective device on a public grade crossing where the railroad has not been requested to do so. A railroad may still be liable for other negligent conduct, such as the failure to maintain a working crossing arm or obstructing vision at a crossing. This is precisely the analysis undertaken by our Supreme Court in *Kitchen*, supra at 209 (2), when it considered whether other conduct by CSX, besides the failure to install warning signals, created a common-law duty.

Evans Timber relies upon *CSX Transp. v. Easterwood*, 507 U. S. 658 (113 SC 1732, 123 LE2d 387) (1993), in support of its contention that its common-law claim is not preempted by the GCPT. However, that reliance is misplaced. *Easterwood* held that the Railroad-Highway Crossing section of the chapter on Federal Aid Highways did not preempt state law explicitly or implicitly and that, consequently, *federal* law did not preempt a common-law claim, to the extent one existed under Georgia law. The Court then relied on *Southern R. Co. v. Ga. Kraft Co.*, supra, as a basis for the common-law claim.

Unlike the federal regulations at issue in *Easterwood*, the comprehensive and pervasive legislation of the GCPT demonstrates the General Assembly's intent to preempt the common-law duty of the railroad to install protective devices at public grade crossings. "When interpreting a statute we are required to look for the intent of the legislature and construe statutes to effectuate that intent." (Punctuation omitted.) *G.I.R. Systems v. Lance*, 219 Ga. App. 829, 832 (3) (466 SE2d 597) (1995). In the present case, the legislative intent to change the existing common law is manifest. The GCPT expressly repealed and replaced previous statutes, including those cited by Evans and amici curiae. Ga. L. 1973, pp. 1174-1190, § 2. Moreover, the GCPT differs significantly from those previous statutes by including railroads within the scope of the GCPT, and grade crossings and signals within the definition of public road, and by delegating responsibility for the installation of protective devices. "The construction of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole." (Punctuation omitted.) *Bennett Elec. Co. v. Spears*, 188 Ga. App. 502, 503 (373 SE2d 286) (1988).

The legislature clearly delegated responsibility for the public road, including traffic control devices, warning signals, and protective devices, to the governmental entities and removed any such responsibility from private parties. The trial court correctly granted Central's motion for directed verdict on Evans Timber's cross-claim.

2. In its second enumeration of error, Evans Timber contends the trial court erred by excluding evidence of other accidents at the crossing. Because Evans Timber has failed to support this error with citation to the record showing that the evidence was proffered at trial and the error preserved, this error is deemed abandoned. *Diffley v. Marshall's at East Lake*, 227 Ga. App. 343 (489 SE2d 123) (1997) (the court will not cull the record on behalf of a party).

*Judgment affirmed. Johnson, C. J., McMurray, P. J., Pope, P. J., Andrews, Smith, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur. Eldridge and Barnes, JJ., concur in part and dissent in part.*

ELDRIDGE, Judge, concurring in part and dissenting in part.

I concur with the majority as to Division 2, but I must respectfully dissent to Division 1 from this radical change in the law regarding the common law duty of railroads to install warning devices at public road grade crossings. The GCPT did not preempt or abolish railroads' common law liability for the failure to install a protective device on a public grade crossing where the railroad has not been requested to do so by a governmental entity. To the contrary, GCPT reaffirmed the common law duty of railroads to maintain safe grade crossings; OCGA § 32-6-190 restates such duty:

> [a]ny railroad whose track or tracks cross a public road at grade shall have a duty to maintain such grade crossing in such condition as to permit the *safe* and convenient passage of public traffic. Such duty of maintenance shall include that portion of the public road lying between the track or tracks and two feet beyond the ends of the crossties on each side of such crossings.

(Emphasis supplied.) See also *Easterwood v. CSX Transp.*, 933 F2d 1548 (11th Cir. 1991), aff'd, 507 U. S. 658 (113 SC 1732, 123 LE2d 387) (1993).

*Kitchen v. CSX Transp.*, 265 Ga. 206, 207 (453 SE2d 712) (1995) dealt with a county road that previously had a bridge crossing a railroad and that was closed by county action so that there no longer was a railroad crossing, which county action relieved the railroad of its common law duty to maintain the bridge and approaches. *Kitchen* did not hold that a common law duty for railroads as to crossings at overpasses had been abolished by statute; the opinion held that the particular facts and circumstances of that case gave rise to no common law duty.

Assuming arguendo that *Nashville, Chattanooga* [*&c. R. Co. v. Cook*, 177 Ga. 196 (170 SE 28) (1933)], imposes a common

law duty of care which survived the GCPT, we do not construe it to impose an obligation on CSXT to erect signs or barriers to warn drivers of the hazard created by the terminus of County Road 77. . . . The hazard alleged here, i.e., the abrupt terminus of the public road without adequate warnings, was situated on the public road, and was neither created nor maintained by CSXT. . . . CSXT breached no common law duty of care owed to appellants in that it neither created nor maintained an artificial condition which gave rise to Kitchen's injuries.

Id. at 209-210.

OCGA § 32-6-200 only gives the power and authority to DOT, a county, or a municipality to mandate the installation and maintenance by the railroad of protective devices at grade crossings over the objection of railroads; nowhere does the statute expressly or impliedly prohibit the railroad from voluntarily taking such action as a common law duty in the exercise of ordinary care to make the crossing safe. Since the purpose of OCGA § 32-6-200 is to empower governmental entities to force railroads to install and maintain safety devices at unsafe grade crossings, then the General Assembly did not intend to prohibit the railroad from voluntarily undertaking such safety measure. The General Assembly did not intend to lessen safety devices at dangerous crossings but to increase such measures beyond what railroads already had undertaken. The General Assembly was aware that railroads were reluctant to incur the cost of such measures voluntarily or to recognize for liability purposes that the crossing was extremely dangerous. The General Assembly intended to provide the governmental entities the power to compel railroads to undertake such action to correct the dangers to cure the existing evil. OCGA § 1-3-1; *McGuire v. McGuire*, 228 Ga. 782, 785 (187 SE2d 859) (1972).

The language of OCGA § 32-6-200 (a) does not prohibit the railroad from undertaking on its own judgment to install a protective device without prior judgment by the DOT, county, or municipality that it is necessary; the Act merely requires that DOT give final approval of any plan and specification for a protective device before the installation. DOT's exercise of veto power over action by the railroad, county, or municipality is different from a prohibition of the railroad from seeking DOT's permission to install a protective device.

"The common-law rule is still of force and effect in this State, except where it has been changed by express statutory enactment or by necessary implication. [Cits.]" *Robeson v. Intl. Indem. Co.*, 248 Ga. 306, 307 (1) (282 SE2d 896) (1981). Statutes in derogation of common law must be strictly construed and never extended beyond plain and

explicit terms. *Duncan v. Entrekin*, 211 Ga. 311, 312 (85 SE2d 771) (1955); see also *Fayette County v. Seagraves*, 245 Ga. 196, 197-198 (264 SE2d 13) (1980). Thus, preemption of the common law should not occur from such uncertain implications read into the statute.

The caption of GCPT is silent as to the abolition of common law duties of railroads at grade crossings as a purpose of the Act. Ga. L. 1973, pp. 947-958. The caption does state the purpose of the Act as "providing for maintenance of grade crossings . . . providing the authority of the Department, a county or a municipality to order the installation of protective devices and providing for the division of the costs of acquisition and installation." Id. at 955. Prior to the Act, the governmental entities were unable to compel railroads to erect such safety devices.

This Court, in *Central of Ga. R. Co. v. Markert*, 200 Ga. App. 851, 853-854 (4) (410 SE2d 437) (1991), held that a common law duty existed at private railroad grade crossings:

> [w]ith respect to persons rightfully using a private crossing, the duty of the railroad company is similar to its duty as to users of public crossings, and as to them, it must exercise reasonable or ordinary care, commensurate with the danger of the particular situation. Accordingly, [railroads] would have no less of a common law duty with regard to a private crossing than they would have with regard to a public crossing.

(Citation and punctuation omitted.) Id. at 853-854. If the General Assembly intended to preempt the field and to avoid an equal protection issue, then it would have done so uniformly. In the dicta of such opinion, such common law duty was implied to exist both in public and private railroad grade crossings. Id. at 854.

In *Wall v. Southern R. Co.*, 196 Ga. App. 483, 485 (1) (396 SE2d 266) (1990), this Court held that having functioning safety devices at a railroad grade crossing did not absolve the railroad of the common law duty to exercise ordinary care, i.e., have a flagman present. Thus, the common law duty survived the GCPT; otherwise, how could the common law duty arise where the GCPT safety device had been installed and was functioning?

Finally, *Southern R. Co. v. Kraft*, 188 Ga. App. 623, 624 (5) (373 SE2d 774) (1988), was a full court opinion which rejected the argument that DOT must decide what warnings or safety devices were to be used at a crossing and held that railroads had a common law duty as to safety devices at grade crossings.

The majority would find that the General Assembly through the GCPT selectively abolished common law duties of railroads at public

grade crossings for installing protective devices without governmental direction but not for other purposes, creating an equal protection issue.

I am authorized to state that Judge Barnes joins in this opinion.

BARNES, Judge, concurring in part and dissenting in part.

While I am in full agreement with Judge Eldridge's opinion, I write separately to point out that I am troubled by the fact that since this 1972 statute was passed, this issue has arisen numerous times in trial and appellate courts and has been addressed as elaborated on more fully above, without reaching the result that the majority reaches.

DECIDED JUNE 22, 1999 —
RECONSIDERATION DENIED JULY 22, 1999

*Jones, Cork & Miller, Carr G. Dodson, Thomas W. Joyce*, for appellant.

*Hall, Bloch, Garland & Meyer, John S. Stewart*, for appellee.

*Cathey & Strain, Dennis T. Cathey, James E. Staples, Jr., Blackwood, Matthews & Steel, John D. Steel, John B. Briggs, Lamar, Archer & Cofrin, Robert C. Lamar, David W. Davenport, Casey, Gilson & Williams, Matthew D. Williams, Glenn C. Tornillo, James F. Grubiak*, amici curiae.