

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-20-2004

# Strozyk v. Norfolk S Corp

Precedential or Non-Precedential: Precedential

Docket No. 02-3957

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Strozyk v. Norfolk S Corp" (2004). *2004 Decisions.* Paper 1045.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1045

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed January 20, 2004

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3957

CLAIR STROZYK, Individually, as Parent of, and as
Co-Administrator of the Estate of Christopher Strozyk;
DENISE STROZYK, Individually, as Parent of, and as
Co-Administratrix of the Estate of Christopher Strozyk,
Appellants

v.

NORFOLK SOUTHERN CORP.;
JOSEPH SULLIVAN

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 01-cv-02478)
District Court Judge: Honorable Ronald L. Buckwalter

Argued October 2, 2003

Before: RENDELL, WEIS and GARTH, *Circuit Judges.*

(Filed: January 20, 2004)

Frederick E. Charles [ARGUED]
441 Linden Street
Allentown, PA 18101

Stephen L. Shields
104 West Fourth Street
P.O. Box 5456
Bethlehem, PA 18015
    *Counsel for Appellants*

Paul F.X. Gallagher [ARGUED]
Gallagher, Rowan & Egbert
1500 Walnut Street
Suite 1600
Philadelphia, PA 19102
*Counsel for Appellees*

## OPINION OF THE COURT

RENDELL, *Circuit Judge.*

Christopher Strozyk was killed at a railroad crossing when a train owned and operated by Norfolk Southern collided with the truck he was driving. Subsequently, Strozyk's parents filed suit against Norfolk, alleging, *inter alia*, the railroad's negligence for inadequate warning devices at the grade crossing, excessive speed of the train, and failure to provide proper sight lines for motorists crossing the track. Norfolk moved the District Court for summary judgment, arguing that much of the Strozyks' complaint was preempted by virtue of the Federal Railroad Safety Act of 1970 ("FRSA"), 84 Stat. 971, as amended, 49 U.S.C. § 20101 et seq. The District Court held that federal regulations setting forth guidelines for the installation of adequate warning devices, 23 C.F.R. §§ 646.214(b)(3) and (b)(4), compelled the dismissal of most of the Strozyks' claims. On appeal, the Strozyks contend that while several allegations such as the inadequacy of warning devices may have been properly dismissed, the District Court improperly struck other claims arguably unrelated to the scope of § 646.214, namely, claims concerning limited sight lines and failure to maintain a safe grade crossing. Because we agree with the Strozyks that § 646.214 does not cover claims of limited visibility and negligent maintenance of a grade crossing, we will reverse.

I.

The fatal collision took place on May 8, 2000 at a railroad crossing that intersects Smith Lane in Alburtis, Pennsylvania. The District Court found that warning

devices, specifically crossbucks—the X-shaped signs placed on posts that read "RAILROAD CROSSING"—were installed at the Smith Lane crossing around June of 1987. These warning signs were installed under the auspices of a federal-state crossbuck replacement program and paid for in part with federal funds, and were in place at the time of Strozyk's accident, thirteen years later. These facts are unchallenged on this appeal.

Following the accident, in March of 2001, the Strozyks filed a wrongful death and survival action in Pennsylvania state court, asserting various claims of negligence against Norfolk.[1] After removing the case to the District Court based on diversity jurisdiction, Norfolk then moved for summary judgment. It argued that the FRSA preempted state tort claims where federal funding was involved in the improvement of the grade crossing. Norfolk contended that the crossbucks at the Smith Lane crossing were installed in part with federal money and that, consequently, the Strozyks' claims were preempted. In an order issued on June 5, 2002, the District Court agreed, and granted Norfolk's motion for partial summary judgment, eliminating all but two of the Strozyks' claims as preempted. The Strozyks do not appeal the District Court's finding that the warning devices at the Smith Lane crossing were installed with federal funds nor do they appeal what follows from that finding, i.e., that they may not challenge the warning devices' adequacy.

However, going beyond the claims relating to warning devices, the District Court reasoned that § 646.214(b) compelled the dismissal of several other claims unrelated to warning devices, only two of which are the subject of this

---

1. The Strozyks' complaint included numerous allegations including that Norfolk: 1) failed to provide proper warning devices at the railroad crossing; 2) failed to give proper sound, signal or warning of the presence of its train; 3) failed to yield to the decedent's right of way; 4) violated local and federal laws concerning safety at railroad crossings; 5) operated its train at excessive speed; 6) failed to provide proper sight lines for vehicles crossing the tracks; 7) failed to adopt and install necessary protective measures to safeguard against fatal accidents; 8) created a foreseeable risk of injury to individuals crossing the tracks; and, 9) failed to hire, employ, or retain personnel qualified to operate its trains.

appeal. First, the Strozyks claim that Norfolk violated its duty of care under Pennsylvania law to maintain a safe grade crossing. Second, and relatedly, the Strozyks claim that obstructed sight lines at the grade crossing restricted the ability to see oncoming trains. Indeed, the Strozyks' principal allegation appears to be that excess vegetation, which Norfolk had a duty to control, obscured decedent's view of the oncoming train.

After the District Court's June 5 order, only two claims remained: a) failing to give proper sound, signal, or warning of the presence of the train prior to collision and b) violating the decedent's right of way. Norfolk then filed a motion for summary judgment with respect to these claims, arguing that its engineer had sounded a horn on its approach to the Smith Lane Crossing. In responding to this motion, the Strozyks conceded that a horn was blown and stated that Norfolk's motion was "unopposed." Consequently, the District Court, in an order issued on September 27, 2001, granted Norfolk's second motion for summary judgment and dismissed the case.[2] "Because the grant of summary judgment and the dismissal of the complaint are inconsistent," we will disregard the District Court's reference to dismissal of the Strozyks' complaint and treat the record instead as a summary judgment record. *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 121 n.2 (3d Cir. 1999).

---

2. In their reply brief, the Strozyks contend for the first time that the District Court also erred with respect to the dismissal of the two remaining claims, i.e., "failing to give proper sound, signal or warning of the presence of [the] train prior to its collision with Plaintiffs' decedent's vehicle under the circumstances" and "violating the Plaintiffs' decedent, Christopher Strozyk's right of way under the circumstances." But, as we have repeatedly instructed, this Court requires appellants to set forth issues and arguments raised on appeal in their opening brief. Thus, the Strozyks' challenge of the second summary judgment order was "one brief too late." *Republic of Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 71 n.5 (3d Cir. 1994). Not only did the Strozyks fail to properly challenge the second summary judgment on appeal, they did not, as already noted, oppose the motion at the District Court level. We therefore decline to disturb the District Court's order in this regard.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Our jurisdiction for review of the District Court's final order is based on 28 U.S.C. § 1291. We review summary judgment motions *de novo*, using the same test applicable to a district court. *Mass. Sch. of Law v. ABA*, 107 F.3d 1026, 1032 (3d Cir. 1997).

## A.

We are asked to determine whether 23 C.F.R. § 646.214(b) preempts the subject matter of state negligence law regarding the maintenance of a safe grade crossing, including duties with respect to restricted sight lines. Subsections §§ 646.214(b)(3) and (4) set forth guidelines for selecting the appropriate warning devices for installation at grade crossings improved with federal funding.[3] These guidelines preempt state law by virtue of

---

3. Sections 646.214(b)(3) and (4) provide:

> (3)(I) Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
>
> (A) Multiple main line railroad tracks.
>
> (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
>
> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.
>
> (D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
>
> (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
>
> (F) A diagnostic team recommends them.
>
> (ii) In individual cases where a diagnostic team justifies that gates are not appropriate, FHWA may find that the above requirements are not applicable.

the FRSA's express preemption provision. Pursuant to this provision, state laws, regulations, and common law duties concerning railroad safety remain in force until the Secretary of Transportation promulgates regulations or orders that "cover[ ] the subject matter of the State requirement." 49 U.S.C. § 20106. The Supreme Court has observed that the FRSA's preemption clause "displays considerable solicitude for state law" and that preemption will lie only if the federal regulations, in our case, §§ 646.214(b)(3) and (4), "substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664–65 (1993). Particularly, the Court in *Shanklin v. Norfolk S. Ry. Co.*, 529 U.S. 344 (2000), has held that by virtue of the FRSA, these regulations preempt state tort claims challenging the adequacy of warning devices that are installed in part with federal funds.

After first concluding that federal funds were expended for the installation of the crossbucks at the Smith Lane crossing, the District Court considered which of the Strozyks' claims were preempted by the FRSA. The District Court dismissed the Strozyks' claims that the crossbucks at the grade crossings were inadequate—a determination which the Strozyks do not challenge. But the District Court went on to dismiss other claims which the Strozyks argue were not within the subject matter of § 646.214(b). Reading *Shanklin* broadly, the District Court held that § 646.214(b)'s subject matter covered not only warning device claims, but other negligence claims arising out of a grade crossing accident. The Court set forth two rationales for its dismissal of the Strozyks' claims concerning limited sight lines and failure to maintain a safe grade crossing. On appeal, Norfolk posits a third ground for affirmance.

---

(4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.

23 C.F.R. § 646.214(b) (2003).

First, with respect to the Strozyks' limited visibility claim, the District Court observed that § 646.214(b) lists "unusually restricted sight distance" as a factor mandating the installation of active warning devices. The District Court reasoned that the standard set by the regulation encompasses not just the ultimate selection of a warning device but "all the considerations set forth in section 646.214(b)(3)(A) through (F), including the appropriate response to limited sight distance or unusually restricted sight distance." The Court concluded that because the federal regulation's subject matter includes visibility, the Strozyks' limited sight lines claim was preempted.

Second, with respect to the Strozyks' claim that Norfolk did not maintain a safe grade crossing, the District Court held that it would "defy logic to allow preemption in the case of a specific allegation that a railroad failed to maintain adequate warning devices, rendering a grade crossing unsafe, but not the general allegation that a railroad failed to maintain a safe grade crossing." After concluding that the specific claims concerning warning devices and the general claims of a safe grade crossing were "one in the same [sic]", the District Court dismissed the Strozyks' general maintenance claims as preempted. *Id.*

Norfolk urges that, in addition to adopting the District Court's reasoning regarding the scope of the regulation, we should affirm on different grounds, namely, that Norfolk met its duty of care to the decedent. Indeed, on appeal Norfolk appears to sidestep the substance of the District Court's preemption determination, and instead, challenges the merits of the Strozyks' claims under Pennsylvania negligence law. Norfolk contends that Pennsylvania common law establishes an either/or standard for due care at a grade crossing: sounding a horn obviates a railroad's duty to provide proper sight lines and vice versa. Pointing to the Strozyks' concession to the District Court that the train engineer did sound a horn 1,500 to 1,800 feet from the crossing, Norfolk argues that even in the absence of preemption, the fact that it gave the sound warning necessarily means that it prevails as a matter of law on the Strozyks' claims, regardless of any limited sight lines or failure to maintain a safe grade crossing.

We consider each argument in turn.

B.

The District Court's reading of § 646.214(b) framed the basis for its dismissal of the Strozyks' limited sight lines claim. Thus, we begin with the language and intent of the regulation. Section 646.214(b), promulgated under the authority of both the FRSA and the Highway Safety Act of 1973, sets forth the design standards of the Federal Railway-Highway Crossings Program ("Crossings Program"), 23 U.S.C. § 130, which offers states federal funding to improve grade crossings. Subsections (b)(3) and (4), in particular, require the installation of automatic gates with flashing light signals given certain conditions, such as high speed train operation, high volume of automobile traffic, and restricted sight distance.

We can find nothing in the text of the regulation that dictates that the Strozyks' visibility claim was preempted along with their claims regarding the adequacy of the warning devices. To the contrary, the plain language of the regulation indicates that the subject matter is the adequacy of warning devices, not the considerations involved in choosing them or state negligence law more broadly. The regulations provide that "[a]dequate warning devices . . . are to include automatic gates with flashing light signals when one or more of the following conditions exist . . . ." The bare mention of these conditions, including limited visibility, does not indicate an intent to regulate those conditions. By this reasoning, each of the listed considerations, e.g., schoolbus traffic, high speed trains, or trucks freighted with hazardous materials, would be the subject matter of the regulation. The plain meaning of the regulation defies such an expansive reading.

To be certain, the regulations before us do involve the issue of limited sight distance. But the Supreme Court has cautioned that a showing that certain FRSA regulations preempt state law requires "more than that they 'touch upon' or 'relate to' that subject matter . . . ." *Easterwood*, 507 U.S. at 664. For preemption to be found, the regulation must "substantially subsume[ ]" a subject area of state law.

*Id.* The mere listing of various conditions that would require active warning devices as a matter of federal law does not constitute substantial subsumption requiring the displacement of related state law. We therefore find that the District Court erred in its reading of the regulation and its dismissal of the Strozyks' limited sight distance claim.

## C.

With respect to the Strozyks' claim regarding general maintenance of a safe grade crossing, the District Court held that it was illogical to preempt claims of inadequate warning devices while leaving untouched such a general negligence claim, concluding that the warning devices claim and the general maintenance claim essentially collapsed into each other. But, we do not believe that the text of the regulation, discussed above, or its interpretation by the Supreme Court, compels this result.

In the two principal Supreme Court opinions that guide our analysis in this area, *Easterwood* and *Shanklin*, the plaintiffs sued a railroad for, among other claims, inadequate warning signals at grade crossings. The Supreme Court held that once federal funding has been used to install warning devices, the railroad is relieved of liability as to those claims. *See Shanklin*, 529 U.S. at 358; *Easterwood*, 507 U.S. at 670. The Court held that with federally funded grade crossing improvements, a railroad's state law obligations with respect to appropriate warning devices are superseded by federal requirements as set forth in §§ 646.214(b)(3) and (4).

In *Easterwood*, a widow brought a wrongful death action under Georgia law on behalf of her husband, who died in a grade crossing collision. She sued the railroad for, among other things, failing to maintain adequate warning devices at the grade crossing and operating the train at excessive speed. 507 U.S. at 661. The Supreme Court considered whether several regulations promulgated under the FRSA preempted Easterwood's claims. First, it considered the provisions of 23 C.F.R. pt. 924, the regulations that outline "the general terms of the bargain between the Federal and State Governments." *Id.* at 667. The Court ruled that

nothing on the face of these regulations indicated an intention to alter the states' traditional role in regulating railroads. *Id.* at 667-68. Second, the Court ruled that 23 C.F.R. § 646.214(b)(1)'s requirement that states comply with the Manual on Uniform Traffic Control Devices for Streets and Highways ("Manual") did not preempt the Easterwood's claims. "Rather than establishing an alternative scheme of duties incompatible with existing Georgia negligence law, the Manual disavows any claim to cover the subject matter of that body of law." *Id.* at 670.

Lastly, the Court considered the regulations that form the basis of the appeal before us: §§ 646.214(b)(3) and (4). The Court held that these regulations "displace state and private decisionmaking authority by establishing a federal-law requirement that certain protective devices be installed or federal approval obtained." *Id.* Hence, these regulations preempt, when applicable, claims challenging the adequacy of warning devices. Yet, because the federal Crossing Program warning devices were never actually installed at the accident site, the Court ultimately found that Easterwood's warning device claims were not preempted.[4]

The Court in *Shanklin* followed the path it had forged in the *Easterwood* case. Like the decedents in *Easterwood* and the case at bar, Eddie Shanklin died when his truck collided with a train at a grade crossing. Unlike the grade crossing in *Easterwood*, there were indeed warning devices at the grade crossing which were installed with federal participation. The defendant railroad appealed an adverse verdict for, *inter alia*, the inadequacy of those warning devices. Guided by *Easterwood*, the Court ruled for the railroad, holding that existence of warning devices installed under the auspices of the Crossings Program preempted claims challenging the adequacy of those warning devices.[5]

---

4. The Court ruled, however, that Easterwood's state law excessive speed claim was preempted by 49 C.F.R. § 213.9(a), which sets maximum allowable operating speeds for all freight and passenger trains. *Easterwood*, 507 U.S. at 673. Easterwood had conceded that the train that killed her husband was traveling under the speed limit prescribed by this federal regulation. *Id.*

5. Like the Strozyks, the plaintiff in *Shanklin* also alleged that Norfolk had been negligent by failing to remove vegetation from the area

See *Shanklin*, 529 U.S. at 358 (holding that "once [railroads] have installed federally funded devices at a particular crossing—[states may not] hold the railroad responsible for the adequacy of those warning devices"). Moreover, the Court settled a division among the Circuit Courts of Appeals by clarifying that an individualized determination ensuring the adequacy of warning devices at a particular crossing is not a necessary precondition to preemption. *Id.* at 356. Rather, the Court held in both *Easterwood* and *Shanklin* that state law challenges to the adequacy of warning devices installed pursuant to § 646.214(b) are preempted.

Unfortunately, the Court made a few broad pronouncements in these opinions that seemingly point to a blanket preemption of state tort law. The Court in *Easterwood* stated that § 646.214(b) "therefore cover[s] the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings." 507 U.S. at 671; *see also Shanklin*, 529 U.S. at 353 (quoting this language). Even more broadly, the Court stated that "[e]xamination of these regulations [§ 646.214(b)(3) and (4)] demonstrates that, when they are applicable, state tort law is pre-empted." *Easterwood*, 507 U.S. at 670. Read in isolation, these sentences seem to support the District Court's reasoning and the sweeping proposition that § 646.214(b) relieves railroads of any common law duty, including duties to maintain a safe grade crossing that are unrelated to the adequacy of warning devices.

---

surrounding the crossing. Norfolk conceded, however, in its Supreme Court brief that Shanklin's vegetation claim was not preempted by federal law. *See* Brief for Petitioner at 47 n.25, *Shanklin v. Norfolk S. Ry. Co.*, 529 U.S. 344 (2000) (No. 99-312) ("[T]here is no dispute that Ms. Shanklin is entitled on remand to a trial on her three remaining theories of petitioner's liability under state law: namely, the alleged failure of petitioner to (1) sound the horn in a timely fashion; (2) apply the brakes in a timely fashion; and (3) *remove vegetation from the crossing.*" (emphasis added)). That is, of course, inconsistent with the position Norfolk has assumed in the Strozyks' lawsuit.

But these passages should not be read out of context. Read in their totality, neither opinion speaks of supplanting the negligence regime of the fifty states; nor do these cases intimate that they are relieving railroads of any and all state duties of care with respect to grade crossing safety in general. Instead, the Supreme Court recognized that "the scheme of [state] negligence liability could just as easily complement" the basic division of state and federal responsibilities under the Crossings Program regulations. *Easterwood*, 507 U.S. at 668 (interpreting regulations contained in 23 C.F.R. pt. 924). Indeed, the Court noted that "with respect to grade crossing safety, the responsibilities of railroads and the State are, and traditionally have been, quite distinct."[6] *Id.* After acknowledging the states' traditional role in the regulation of railroad safety, and invoking the presumption against preemption, *id.* at 668, it would be odd indeed if the Court intended its construction of § 646.214 to entirely displace state law assuring safety at grade crossings, separate and apart from the adequacy of warning devices. And, in fact, the last chapter of the *Shanklin* litigation makes this clear. After the Supreme Court's remand order, the plaintiff proceeded with, and prevailed in, a jury trial with respect to a limited sight lines/tort vegetation claim, similar to that alleged by the Strozyks. *Shanklin v. Norfolk S. Ry. Co.*, No. 94-1212, slip op. at 3, (W.D. Tenn. Oct. 24, 2001).

---

6. By virtue of the FRSA, § 646.214(b) did, of course, modify the traditional scheme of railroad negligence liability. Prior to the FRSA, the railroad generally was required to identify hazardous crossings, help select adequate warning devices, seek state approval for, and when necessary, finance the installation of, those warning devices. Brief of Amicus Curiae United States at 17, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) (Nos. 91-790 and 91-1206). The Supreme Court has observed that participation in the federal Crossings Program altered this division of responsibility. The federal government by virtue of § 646.214(b) has "effectively set the terms under which railroads are to participate in the improvement of crossings." *Easterwood*, 507 U.S. at 670. And it is this federal involvement that relieves the railroad from suits challenging the adequacy of warning devices. While § 646.214(b) effected changes in the improvement of grade crossings, it did not eliminate other long-standing responsibility imposed on railroads by the various states.

Our reading also comports with the interpretation given to the regulation by the Federal Highway Administration ("FHWA"), which the Supreme Court has quoted with approval. In *Shanklin*, the Court noted that it had earlier adopted as authoritative the FHWA's construction of § 646.214(b). *Id.* at 356 ("Thus, *Easterwood* adopted the FHWA's own understanding of the application of §§ 646.214(b)(3) and (4), a regulation that the agency had been administering for 17 years.") (citing Brief of Amicus Curiae United States at 24, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) (Nos. 91-790 and 91-1206) ("U.S. Brief")). The FHWA's declaration made clear the limited scope of § 646.214(b). "[W]e do not believe federal grade crossing regulations cover the entire subject matter of a railroad's duty to provide a reasonably safe grade crossing." U.S. Brief at 18. "As a result, §§ 646.214(b)(3) and (4) 'cover the subject matter of adequate safety devices at crossings that have been improved with the use of federal funds.'" *Shanklin*, 529 U.S. at 354 (quoting U.S. Brief at 23). Thus, the ambit of § 646.214(b) is limited to the adequacy of warning devices, nothing more.

And, the courts have recognized that state law duties to maintain a safe grade crossing remain viable. In dicta, the Supreme Court observed that Georgia law imposes a duty on railroads to "take all reasonable precautions to maintain grade crossing safety." *Easterwood*, 507 U.S. at 665 n.5 (citing *Southern R. Co. v. Georgia Kraft Co.*, 373 S.E.2d 774, 776 (Ga. Ct. App. 1988), *overruled by Evans Timber Co., Inc. v. Central of Ga. R.R. Co.*, 519 S.E.2d 706, 709 (Ga. Ct. App. 1999)). Georgia's laws on railroads have changed since *Easterwood*, but as noted by the Georgia Court of Appeals "[w]ithout question, the common-law duty of the railroad, except with respect to initiating and authorizing the installation of protective devices at a railroad crossing, remains in effect . . . . A railroad may still be liable for other negligent conduct, such as the failure to maintain a working crossing arm or obstructing vision at a crossing." *Evans Timber*, 519 S.E.2d at 709-10. Similarly, in a case that involved, as here, allegations of excessive vegetation, the Supreme Court of Mississippi held that "[t]he language and discussion [in *Shanklin*] throughout refer exclusively to

the installation and maintenance of warning devices alone and not the maintenance of the general track conditions." *Clark v. Ill. Cent. Ry. Co.*, 794 So.2d 191, 196 (Miss. 2001).

For these reasons, we decline to adopt an expansive view of §§ 646.214(b)(3) and (4).[7] While, as *Easterwood* and *Shanklin* make clear, §§ 646.214(b)(3) and (4) substantially altered the landscape of railroad liability, by restricting tort plaintiffs from interposing state law obligations concerning appropriate warning devices, the regulations do not eclipse those duties ensuring safe grade crossings that are unrelated to warning devices, such as the duty to keep visibility at grade crossings free from obstructions. As those regulations cover the subject matter of warning devices, the Strozyks' claims that Norfolk failed to maintain a safe grade crossing, apart from the warning devices, and relatedly failed to ensure clear sight lines of oncoming trains are not preempted.

### D.

Norfolk's principal argument on appeal is that Pennsylvania common law establishes an either/or standard of due care at a grade crossing: sounding a horn obviates a railroad's duty to provide proper sight lines and vice versa. Given the Strozyks' concession that a horn was

---

7. The Strozyks averred that excessive vegetation existed at the crossing when the accident occurred, thirteen years after the warning devices were installed there. The District Court reasoned that because § 646.214(b) prescribes automatic gates for limited sight conditions, the installation of crossbucks at the Smith Lane Crossing indicates that no limited sight problem existed there. This inference does not necessarily follow; however accurate the assessment of the grade crossing may have been in 1987, much may have changed since, including an overgrowth of vegetation. In any event, such an inference should be read in the light most favorable to the Strozyks as nonmovants challenging summary judgment. *S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 452 (3d Cir. 1997). We note, however, that despite any change of conditions, claims regarding the inadequacy of warning devices remain preempted. *Shanklin*, 529 U.S. at 357-58 ("Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question.").

sounded, Norfolk argues that irrespective of our decision on preemption, it should ultimately prevail as a matter of law.

This challenge to the Strozyks' claims is made for the first time on this appeal. While in its second motion for summary judgment, Norfolk had made a similar argument regarding Pennsylvania common law, that motion only dealt with the two remaining claims of failure to give proper sound, signal, or warning of the presence of the train prior to collision and violation of decedent's right of way; the remaining claims had been already preempted. Axiomatically, we decline to pass on issues not decided by the lower court. *Peachlum v. City of York, Pa.*, 333 F.3d 429, 439-40 (3d Cir. 2003) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))). We leave it for the District Court to address the merits of Norfolk's argument with respect to Pennsylvania common law on this issue.

We note that, were this a pure matter of law, we might view the situation differently, and seek supplemental briefing so as to resolve this issue. However, the case law cited by Norfolk does not appear to us to draw as clear a line as Norfolk urges.[8] Instead, the caselaw renders the determination as to the railroad's duty of care to be heavily fact-contingent, with all the conditions being relevant. A railroad must "exercise ordinary care at a crossing by adopting a reasonably safe and effective method, commensurate with the dangers of a particular crossing, of warning travelers of the approach of the train." *Nat'l Freight, Inc. v. Southeastern Pa. Transp. Auth.*, 698 F. Supp. 74, 78 (E.D. Pa. 1988), *aff'd*, 872 F.2d 413 (3d Cir. 1989) (discussing Pennsylvania common law); *McGlinchey v. Baker*, 356 F.Supp. 1134, 1142 (E.D.Pa. 1973) (Becker, J.). Pennsylvania cases wrestle with the effect of all types of

---

8. Indeed, Norfolk conceded in oral argument that the cases it relies upon for this proposition establish merely that railroads have a duty to warn. Since warnings can either be visual or auditory, Norfolk extrapolated its rule that its sounding of a horn discharged in full its duty of care to the decedent. Pennsylvania case law does not however appear to clearly state the principle urged by Norfolk.

conditions and obstructions, such as vegetation or embankments, the speed of the oncoming train, and whether a whistle was sounded; none base a determination, as a matter of law, on one factor alone such as a horn warning. *See, e.g., Buchecker v. Reading Co.*, 412 A.2d 147, 153 (Pa. Super. Ct. 1979) ("[T]he sound warnings, by whistle and bell, if given, were given in a deep ditch or cut where the sound waves could only be impeded by the sides of the embankment and so deflected that they could not adequately warn [motorists]."). Thus, the adequacy of any warning, visual or auditory, depends on the circumstances at the crossing such as visibility and terrain, and not a single factor such as auditory or visual cues. We will leave the issue of whether or not the railroad met its duty of care, and the relevant standard, for the District Court and the fact finder on remand.

### III.

As § 646.214(b) only covers the subject matter of warning devices, we will reverse the District Court's order granting summary judgment to Norfolk.[9] In light of the limited scope of the Strozyks' appeal, we reinstate only those claims relating to limited sight conditions, namely excessive vegetation, and general maintenance of a safe grade crossing, apart from the adequacy of warning devices. We will therefore remand for further proceedings in accordance with this opinion.

---

9. Our decision today is limited to the regulation considered by the District Court, namely § 646.214(b). We note another federal regulation promulgated under the FRSA requires railroads to control vegetation on railroad property which is on or immediately adjacent to the roadbed. 49 C.F.R. § 213.37. Additionally, the Pennsylvania Public Utility Commission requires railroads to control vegetation within 200 feet of a grade crossing to ensure visibility by motorists. 66 Pa. Cons. Stat. Ann. § 2702(b). However, the District Court did not consider nor do we express any opinion as to the applicability of these or any other regulations to the case at bar.

17

A True Copy:
　　　Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*